## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**SANDRA RAGSDALE**
    **Plaintiff,**

    **v.**                                    **Civil No.: 07-1256 (RBW)**

**ALBERTO GONZALEZ,**

**U.S. DEPARTMENT OF JUSTICE,**

    **Defendant.**

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR FOR SUMMARY JUDGMENT

    **NOW COMES**, Plaintiff, Sandra Ragsdale, and opposes Defendant's motion to dismiss, or for summary judgment in the above-captioned matter. In support of this motion, Plaintiff has attached an accompanying memorandum of points and authorities.

               Respectfully submitted on behalf of Plaintiff:

November 27, 2007          _____/S/_____
                          Nathaniel D. Johnson (Federal #14729 MD)
                          THE LAW FIRM OF NATHANIEL D. JOHNSON, L.L.C.
                          3475 Leonardtown Road, Suite 200
                          Waldorf, Maryland  20602
                          301-645-9103
                          301-861-0411 fax

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**SANDRA RAGSDALE**
    **Plaintiff,**

**v.**
                             **Civil No.: 07-1256 (RBW)**

**ALBERTO GONZALEZ,**

**U.S. DEPARTMENT OF JUSTICE,**

    **Defendant.**

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
HER OPPOSITION TO DEFENDANT'S MOTION TO DISMISS,
OR FOR SUMMARY JUDGMENT**

## INTRODUCTION

On July 12, 2007, Plaintiff, Sandra Ragsdale, brought this civil action in accordance with the Americans with Disability Act of 1990, as amended. (Dkt. No. 1). Plaintiff, specifically, asserts claims of Disparate Treatment and Hostile Work Environment based upon her well-documented disabilities. (See Defendant's Exhibit 1, "Ragsdale Affidavit").

Plaintiff contends that she was denied accrued annual leave during May and June 2005, pay periods 13 and 15, respectively, and, instead, placed on leave without pay (LWOP). Id. Defendant's leave policy is governed in accordance with 5 U.S.C. 6302-6304 and 6306. However, with respect to an employee's accrual of annual leave, Defendant's application of said policy is both convoluted and undefined. (See Plaintiff's Exhibit A, "Jameson's Letter"). Thus, Defendant is empowered to selectively grant accrued annual leave to whomever and whenever management so chooses. Id.

On October 26, 2007, Defendant filed his motion for dismissal, and, or for summary judgment. (Dkt. No. 4). Defendant's motion, however, expends a tremendous amount of effort attempting to divert this Court's attention away from the gravaman of Plaintiff's complaint, namely, denial of earned accrued leave. (See Defendant's Motion at 6). Instead, Defendant argues that the central to Plaintiff's claims is the denial of advance annual leave. Id. Defendant's *legitimate non-discriminatory explanation* fails because Plaintiff's managers granted her requests for accrued annual leave in previous pay periods 11 and 12 while she had a zero annual leave balance and negative sick leave policy. (See Plaintiff's Exhibit B and C).

Plaintiff now comes to oppose Defendant's motion and to amend her complaint to include the Rehabilitation Act of 1973 in place of the ADA. Defendant will not be prejudiced by the amendment. See *Harrison v. Rubin* 174 F.3d 249 C.A.D.C. (1999).

### I.  Standard of Review for Motion to Dismiss:

As stated previously, Plaintiff now amends her complaint to include the Rehabilitation Act of 1973[1] instead of the ADA, with consent. Accordingly, Defendant's motion on this issue is moot.  See *21st Century Telesis Joint Venture v. Federal Commc'ns Comm'n*, 318 F.3d 192, 198 (D.C.Cir.2003).

### II.  Standard of Review for Summary Judgment:

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106

---

[1] 29 U.S.C. § 701 et seq.

S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255, 106 S.Ct. 2505; see also *Wash. Post Co. v. U.S. Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989).

To escape summary judgment, the non-moving party's opposition must consist of more than mere unsupported allegations or denials but must be supported by affidavits or other competent evidence setting forth specific facts establishing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must provide evidence that would permit a reasonable jury to find in the non-moving party's favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C.Cir.1987). "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v. Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. March 31, 1998) (internal citation omitted), aff'd, No. 99-5126, 1999 WL 825425, at *1 (D.C.Cir. Sept.27, 1999).

### III. Plaintiff Has Sustained Her Requisite Burden of Proof:

In the absence of direct or circumstantial evidence of a discriminatory motive, claims involving disparate treatment involving a distinct "employment injury" are analyzed for summary judgment purposes under the familiar *McDonnell Douglas* scheme common to discrimination claims. See *Hawkins v. PepsiCo, Inc.*, 203 F 3d 274, 276 (4th Cir.) cert. denied. 531 U.S. 875, 148 L. Ed. 2d 125, 121 S. Ct. 181, reh'g denied, 531 U.S. 1031, 148 L. Ed. 2d 524, 121 S. Ct. 613 (2000) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)). "A plaintiff may employ the *McDonnell Douglas* burden-

shifting framework to bring her Rehabilitation Act claim before a jury." See *Aka v. Washington Hosp. Ctr*., 156 F.3d 1284, 1288 (D.C.Cir.1998) (en banc).

Once the employee establishes a prima facie case of discrimination, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason.  See *Reeves v. Sanderson Plumbing Prods., Inc.* 530 US 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct 1089 (1981)).  Although intermediate evidentiary burdens shift back and forth under this framework, "the ultimate burden of persuading the trier of fact that the defendant intentionally discrimination against the plaintiff remains at all times with the plaintiff."  *Burdine* at 253.  "And in attempting to satisfy the burden, the plaintiff, once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision, must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. After the plaintiff produces sufficient evidence to refute the defendant's proffered reason, "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up discriminatory purpose." *Reeves*. "Rejection of the defendant's proffered reasons will permit [the] trier of fact to infer the ultimate fact of intentional discrimination."). Id.

In the instant case, Plaintiff has the responsibility of establishing indirect discrimination using the McDonnell-Douglas burden-shifting framework.  See *McDonnell Douglas*. Here, Plaintiff was denied annual leave for May 31, 2005 and June 28, 2005, notwithstanding the fact that she had accrued annual leave. (Plaintiff's Affidavit at 4).  Defendant, instead, placed Plaintiff into LWOP status.  Id. This LWOP classification resulted in adverse consequences in the form of loss compensation or benefits to Plaintiff.  Id. at 11. Defendant argues that accrued

annual leave is not earned until the end of the full pay period. Moreover, because Plaintiff began the pay periods in question with zero leaven balance and negative sick leave, she was required to be placed into LWOP status. Id. Plaintiff contends that Defendant's non-discriminatory explanation is a pretext for illegal discrimination. Id. *Reeves.*

Plaintiff Was Disabled Under the Law

Defendant argues in his motion that Plaintiff is not a "qualified individual" under the Rehabilitation Act. (Defendant's Motion at 16). However, Plaintiff's medical conditions are well-documented and include: Asthma, Systemic Lupus Erythematosus, Hiatal Hernia, Gastroesophageal Reflux Disease, Arthritis, Irritable Bowel Syndrome, Multiple Chronic Allergies and Fibromyalgia. (Plaintiff's Affidavit at 2). Moreover, Plaintiff's condition of Bilateral Patellar Chrondromalacia qualifies as a disability in accordance with the Rehabilitation Act of 1973. Plaintiff contracted that particular medical condition as a direct result of suffering a fall at FBIHQ which required surgery on both of her knees. Id.

Moreover, during the administrative investigation, Plaintiff identified "walking" as a substantial life activity that is significantly hampered by her disability. Id. See *Toyota Motor Mfg., Kentucky, Inc. v. Williams* 534 U.S. 184, 122 S.Ct. 681 U.S.,2002. Id. Specifically, Plaintiff contends that she experiences, "chronic pain and difficulty in walking, resulting from a fall at FBIHQ which required surgery on both of her knees. (Plaintiff's Affidavit at 2).

Plaintiff demonstrated her ability to perform the essential functions of her job, during the relevant time, with or without a reasonable accommodation[2]. For instance, Plaintiff was afforded accommodations that included calling in two hours prior to the beginning of her shift and the option of not having to work during inclement weather. Id. *A priori*, the fact that the Agency

---

[2] Defendant in his motion asserts that Plaintiff cannot establish she was denied a reasonable accommodation. However, that is not Plaintiff's burden under the disparate treatment requirements. *Duncan*.

chose to accommodate Plaintiff, is also evidence that the Agency accepted Plaintiff's condition as a disability for which accommodation was an acceptable response. Plaintiff was disabled from walking, which is accepted as a major life activity thus the Rehabilitation Act is applicable. *Toyota Motor.* Since Plaintiff is disabled under the Rehabilitation Act, she is required to apply the McDonnell-Douglas framework to challenge Defendant's proffered explanation as a pretext for discrimination. *Reeves.*

<u>Plaintiff Can Establish Disparate Treatment Based Upon Her Disability</u>

Plaintiff concedes that in order to establish a prima facie case of prohibited employment discrimination under the Act based on disparate treatment, she must show she " '[has] a disability within the meaning of the Act; that [she] was 'qualified' for the position with or without reasonable accommodation; and that [she] suffered an adverse employment action because of [her] disability.' "(See *Duncan v. Wash. Met. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C.Cir.2001) (quoting *Swanks v. WMATA*, 179 F.3d 929, 934 (D.C.Cir.1999)).

It is undisputed that Plaintiff suffered disparate treatment related to her disability. (Plaintiff's Affidavit at 2). Plaintiff was often chastised by her managers for her leave usage related to her medical conditions. Id. at 9.  When Plaintiff requested leave for pay periods 13th and 15th, respectively, her requests were denied without explanation, and she was instead placed on LWOP. Id. Defendant argues that Plaintiff did not have sufficient leave balance to receive "advance annual leave". (Defendant's Motion at 5).

In the instant case, it is undisputed that Plaintiff began pay periods 11 and 12 with zero annual and an negative sick leave balance. (Exhibits  B and C). Nonetheless, Plaintiff's requests for accrued annual leave were approved by her supervisor, Ms. Huger. Id.  Thereafter, Plaintiff's requests for accrued annual leave were denied based upon the proposition that her leave would

not accrue until the end of the pay period.  (Defendant's Motion at 6).  Plaintiff contends that

Defendant's inconsistent explanation is not worthy of belief and infers discrimination.  *Reeves.*

Both of Defendant's Time and Attendance professionals, Germaine Bradshaw and Selena

Jameson, confirmed that Plaintiff was "singled-out" by her supervisors when she was required to

use accrued annual leave at the end of the pay period, resulting in her placement into LWOP

status:

> "Writer asked Bradshaw if she felt Ragsdale has been singled out by management to
> enforce this policy on as examples to other employees. Bradshaw stated she did feel
> Ragsdale had been singled out, but she could not offer a reason why. She felt the
> supervisor (Huger and UC Haase) were new, because in the past this was not done.
> Bradshaw stated she knew of on one else that may have gone through this situation."
> (See Exhibit D  Investigative Statements of Bradshaw and Jameson).

Additionally, Selena Jameson, the other timekeeper stated as follows:

> "Writer asked Jameson if management had instituted a policy across the board regarding
> leave. Bradshaw [sic] stated that this policy only seems to be used towards Ragsdale." Id.

at 4.

Plaintiff can also identify similarly-situated persons outside of her protected class whom

were afforded leave during the relevant time period.  See *Dorchy v. Washington Metropolitan*

*Area Transit Authority* 45 F.Supp.2d 5 D.D.C.,(1999).  According to information adduced during

the investigation of Plaintiff's administrative complaint, another employee was permitted to use

accrued annual leave during pay period 7. (See Exhibit F).  Ms. Joanne Calatayud was approved

for accrued leave on March 16th through March 18th, although she had been out of work for an

extended period of time on LWOP[3]. (See Exhibit G). Plaintiff contends that Ms. Williams is

similarly-situated since she held the position of Personnel Security Specialist as she and worked

under the direct supervision of Ms. Huger.  Further, Ms. Calatayud was permitted to earn

---

[3] Plaintiff has Ms. Calatayud's Leave Report which will be filed under seal to protect her privacy.

accrued annual at a time in which she had a zero balance for annual leave and a negative sick leave balance.  See *Dorchy*.

As the Supreme Court has explained, "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves*, 530 U.S. at 147, 120 S.Ct. at 2108. In "appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Id. Thus, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 148, 120 S.Ct. at 2109; see *Aka*, 156 F.3d at 1290 (holding that "a plaintiff's discrediting of an employer's stated reason for its employment decision is entitled to considerable weight").

Plaintiff can establish that Defendant's non-discriminatory explanation is a pretext for her disability discrimination.   *Burdine*. Accordingly, whether Plaintiff was singled-out in the approval of her accrued leave, is a material fact which is either in dispute or is undisputed in support of Plaintiff, therefore, Defendant's motion should be denied.

 Plaintiff Suffered Adverse Consequences When She Was Placed On LWOP Status

Defendant's argues that Plaintiff did not sustain an adverse employment action since she was placed in LWOP. (Defendant's Motion at 15).   Defendant's argument is fundamentally flawed. It is undisputed that Plaintiff's loss of accrued annual leave resulted in a monetary loss of $546.40[4].  (Plaintiff's Affidavit at 11).  Recognizing that the Rehabilitation Act applies the Title VII standard to adverse employment test, in *Greer v. Paulson* 2007 WL 3225370 C.A.D.C.,2007, the court held that, "A diminution in employee's pay or benefits can suffice for an "adverse

---

[4]  Plaintiff contends that she earned $273.20 per day for employment with Defendant.

employment action ," under Title VII, even when the employer later provides back pay. Civil

Rights Act of 1964, § 717, 42 U.S.C.A. § 2000e-16. Thus, it is undisputed that Plaintiff sustained

an adverse employment action in the form of loss compensation when Defendant failed to grant

her accrued leave and placed her on LWOP. Accordingly, Defendant's motion for summary

judgment should be denied.

### IV. **Plaintiff's Has Brought Forth a Viable Hostile Work Environment Claim**

As set forth below, Plaintiff has facts and circumstances that establish she was subject to

a hostile work environment. (Plaintiff's Affidavit). To make out a prima facie case of a hostile

work environment claim based on a disability, plaintiff must show that (1) he is a member of a

protected class, in this case a "qualified individual with a disability;" (2) he was subject to

unwelcome harassment; (3) the harassment occurred because of his disability; (4) the harassment

affected a term, condition, or privilege of employment; and (5) the employer knew or should

have known of the harassment, but took no action to prevent it.  See *Pantazes v. Jackson* 366

F.Supp.2d 57 D.D.C. (2005).

Plaintiff contends that she was singled-out by management in her use of accrued annual

leave. (Plaintiff's Affidavit).  Plaintiff further contends that she was falsely accused of "not

turning in cases that were completed. (Plaintiff's Affidavit at 3). Plaintiff's supervisor threatened

her with termination. Id. at 6. Bradshaw and Jameson's observations that Plaintiff was singled

out by management with her use of accrued annual leave. (See Exhibit D). Lastly, Plaintiff was

in such fear that she would be placed on AWOL by her supervisor that she often chose not to

seek medical attention, and, instead, enduring a painful infection . Id. at 8.

Defendant's motion argues,  "plaintiff's allegations do not rise to the level of the severe,

pervasive, and abusive conduct."   Defendant's Motion at 26.   However, whether the

aforementioned conduct rises to the level of culpability against the Defendant. is a triable issue

for the jury to determine .*Pantazes.* Accordingly, Plaintiff's claim for hostile work environment

should survive Defendant's motion.

### CONCLUSION

There are material issues of fact in dispute at to whether Defendant's denial of Plaintiff

accrue annual leave was motivated by discriminatory intent related to her disability.

Accordingly, Plaintiff asks this Court to deny Defendant's motion for summary judgment in its

entirety and this matter proceed to discovery.

Respectfully submitted on behalf of Plaintiff:


November 27, 2007          _____/S/_____
                           Nathaniel D. Johnson (Federal #14729 MD)
                           THE LAW FIRM OF NATHANIEL D. JOHNSON, L.L.C.
                           3475 Leonardtown Road, Suite 200
                           Waldorf, Maryland  20602
                           301-645-9103
                           301-861-0411 fax



### Certificate of Service

I, Nathaniel D. Johnson, certify that on this date, November 27, 2007, the foregoing

Plaintiff's Motion in Opposition, Memorandum of Points and Authorities and Exhibits were sent

to the following addressee, via ECF:

Diane Sullivan, AUSA


Nathaniel D. Johnson:  /S/

## <u>PLAINTIFF'S EXHIBIT LISTS</u>

Exhibit A                          Sallie Jameson's Letter


Exhibit B                          Plaintiff's Pay Period 11


Exhibit C                          Plaintiff's Pay Period 12


Exhibit D                          Investigative Statements of Jameson and Bradshaw


Exhibit E                          [1]Joanne Calatayud's Leave Report


Exhibit F                          Joanne Calatayud's Register for Pay Period 7


Exhibit G                          Joanne Calatayud's Approval for Leave for Pay Period 7

---

[1] Exhibits E will be filed under seal

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SANDRA RAGSDALE**<br>    **Plaintiff,**<br><br>    **v.**<br><br><br><br>    **ALBERTO GONZALEZ,**<br><br>**U.S. DEPARTMENT OF JUSTICE,**<br><br>    **Defendant.** | **Civil No.: 07-1256 (RBW)** |

<u>**Plaintiff's Statements of Material Facts Not in Dispute**</u>

1. Mrs. Sarah Ragsdale, Plaintiff, was employed as a Personnel Security Specialist, Security Reinvestigations Unit, Personnel Security Station, Security Division (SecD), of the Federal Bureau of Investigation. (See Exhibit 1).

2. Plaintiff's well-documented  medical conditions included: Asthma, Systemic Lupus Erythematosus, Hiatal Hernia, Gastroesophageal Reflux Disease, Arthritis, Bilateral Patellar Chrondromalacia, Irritable Bowel Syndrome, Multiple Chronic Allergies and Fibromyalgia.  Plaintiff  identified her specific disability for purposes of her claim as chronic pain and difficulty in walking, resulting from a fall at FBIHQ which required surgery on both of her knees Id. at 2.

3. On May 31, 2005, during pay period 13, Plaintiff requested annual leave from her supervisor, because of her illness. Id. at 1).

4. Plaintiff arrived to work the next day and was informed that the leave request would be denied, and that she would be instead placed on leave without pay status (LWOP). Id.

5. Previously, Plaintiff was permitted to use accrued annual leave in pay periods 11 and 12, without having a beginning balance of annual leave.  Id.

6. Subsequently, on June 25, 2005, during pay period 15, Plaintiff once again was denied her request for accrued annual leave; notwithstanding she had earned accrued leave. Id.

7. Plaintiff contends that Defendant approved her use of accrued leave during pay periods 11 and 12, respectively; however, failed to grant her similar requests for pay periods  13 and 15. Id.

8. The Time and Attendance Professionals, Germaine Bradshaw and Selena Jameson, confirmed that Plaintiff was "singled-out" by her supervisors when she was required to use accrued annual leave at the end of the pay period, resulting in her placement into LWOP status. (Exhibit D).

9. Plaintiff can identify a similarly-situated co-worker who was authorized for use of accrued annual leave notwithstanding she began the pay period with a zero leave balance.  (Exhibit G).


_____/S/_____
Nathaniel D. Johnson (Federal #14729 MD)
THE LAW FIRM OF NATHANIEL D. JOHNSON, L.L.C.
3475 Leonardtown Road, Suite 200
Waldorf, Maryland  20602
301-645-9103
301-861-0411 fax

## HUGER, WINIFRED E. (SecD) (FBI)

**From:** JAMESON, SELINA M. (SecD) (FBI)

**Sent:** Wednesday, June 01, 2005 12:41 PM

**To:** HUGER, WINIFRED E. (SecD) (FBI); HAASE, WYELENE C. (SecD) (FBI); POINDEXTER, LYNN M. (SecD) (FBI); KELLY, BRIAN T. (SecD) (FBI)

**Subject:** FW: Earned Leave

**UNCLASSIFIED**
**NON-RECORD**

It sounds like you may approve the request at your discretion.  However, the system will allow leave to be advanced from the projected end of pp or end of year balance.
Although I feel caught in the middle,  I can only do as you, the supervisor, requests.
Selina
-----Original Message-----
**From:** CEPHAS, YVETTA C. (FD) (FBI)
**Sent:** Wednesday, June 01, 2005 12:03 PM
**To:** JAMESON, SELINA M. (SecD) (FBI)
**Subject:** RE: Earned Leave

**UNCLASSIFIED**
**NON-RECORD**

Leave accurals are not officially earned or applied to an employees totals until the end of the pay period. Our they are applied and used is up to the individual Supervisor.

> -----Original Message-----
> **From:** JAMESON, SELINA M. (SecD) (FBI)
> **Sent:** Wednesday, June 01, 2005 11:55 AM
> **To:** CEPHAS, YVETTA C. (FD) (FBI)
> **Subject:** Earned Leave
>
> **UNCLASSIFIED**
> **NON-RECORD**
>
> There have been some issues regarding the availability of leave earned at the beginning of the pay period.
>
> For instance: if the beginning balance forward from the prior pp is 20 hrs and the earn rate is 8 hrs  = 28 hrs; please clarify whether an employee has the 28 hrs available on the first day of the pp or at end of the 2 week period.
>
> As supervisor, thank you for replying, so that I may forward an official response to the supervisors whose employees' time and attendance I enter.
>
> Selina Jameson
> mgmt. asst.
> Div. 11 - CPAU

**UNCLASSIFIED**

RAGSDALE SANDRA    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    D11-CLEAR    PASSAG  1114
NAME    SSN

1114    EXEMPT    PAY PERIOD:  11    FROM:  5/01/2005  –  5/14/2005
COST CODE    SQUAD    RA    FLSA

| DAY | IN | OUT | Initial for sick Leave * | REMARKS | DAY | IN | OUT | Initial for sick Leave * | REMARKS |
|---|---|---|---|---|---|---|---|---|---|
| Sunday 5/01 | | | | | Sunday 5/08 | | | | |
| Monday 5/02 | 8 | AL | ✓ | | Monday 5/09 | 6:30 | 3:00 | | |
| Tuesday 5/03 | 6:30 | 3:00 | | | Tuesday 5/10 | 6:30 | 3:00 | | |
| Wednesday 5/04 | 6:30 | 3:00 | | | Wednesday 5/11 | 6:30 | 3:00 | | |
| Thursday 5/05 | 1:30 | 3:00 | | | Thursday 5/12 | 6:30 | 3:00 | | |
| Friday 5/06 | 6:30 | 3:00 | | | Friday 5/13 | 6:30 | 3:00 | | |
| Saturday 5/07 | | | | | Saturday 5/14 | | | | |

Attendance Register
FD-420 (Rev. 10-27-92)    * I certify that this absence was in accordance with statutes and regulations authorizing sick leave.
# I certify that the Time and Attendance recorded is correct to the best of my knowledge.

# Employee Signature _Sandra Ragsdale_    # Supervisor Signature _W Fred C Huger_    X59

. NAME (Last, First, Middle Initial)    2. Address(es) and Phone(s) where employee can be reached if leave is for one day or more
_Ragsdale, Sandra_    _214 Wayward Way, Annapolis, MD_

. Cost Code _1114_    3a. Squad _CPHU_    3b. Work Hours _6:30 – 3:00_

. TYPE OF LEAVE/ABSENCE (Check appropriate box(es) below.)

| | DATE | | TIME | | Hours | Minutes | 5. FAMILY AND MEDICAL LEAVE |
|---|---|---|---|---|---|---|---|
| | From: | To: | From: | To: | by type | | |
| ☒ Accrued Annual Leave | 5/2/05 | 5/2/05 | 6:30 | 3:00 | 8 | 00 | If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993, please provide the following information: |
| ☐ Restored Annual Leave | | | | | | | |
| ☐ Advanced Annual Leave | | | | | | | |
| ☐ Time Off Award | | | | | | | I hereby invoke my Family and Medical Leave entitlement. |
| ☐ Accrued Sick Leave | | | | | | | Initial:_____ |
| ☐ Advanced Sick Leave | | | | | | | For the Following: |

Purpose: ☐ Medical/Dental/Optical Examination ☐ Serious Medical ☐ Illness
☐ Family Member - Bereavement/Examination/Illness ☐ Adoption

☐ Birth/Adoption/Foster Care
☐ Compensatory Time Off
☐ Leave Without Pay
☐ Serious Health Condition of Spouse, Son, Daughter, or Parent
☐ Serious Health Condition of Self

. CERTIFICATION: I hereby request leave/approved absence from duty as indicated above and certify that such leave/absence is requested for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the Family and Medical Leave Act of 1993.

EMPLOYEE SIGNATURE _S Ragsdale_    DATE _5/3/04_

. OFFICIAL ACTION ON REQUEST:    ☐ APPROVED    ☐ DISAPPROVED    ☐ CANCELLED
(If disapproved or cancelled, give reason. If annual leave, initiate action to reschedule.)

SUPERVISOR SIGNATURE _W Fred C Huger_    DATE _5/3/05_

| RAGSDALE SANDRA NAME | | | | | 9-84-9496 SSN | | D11-CLEARANT | | ASSAG 1114 | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1114 COST CODE | SQUAD | RA | EXEMPT FLSA | | PAY PERIOD: 12 | FROM: 5/15/2005 | | - 5/28/2005 | | |

| DAY | IN | OUT | Initial for sick Leave * | REMARKS | DAY | IN | OUT | Initial for sick Leave * | REMARKS |
|---|---|---|---|---|---|---|---|---|---|
| Sunday 5/15 | | | | | Sunday 5/22 | | | | |
| Monday 5/16 | 8 | AL | ✓ | | Monday 5/23 | L W O P | | | adj 6/1/05 ③ |
| Tuesday 5/17 | 6:30 | 3:00 | | | Tuesday 5/24 | L W O P | | | adj 4.105 ③ |
| Wednesday 5/18 | 6:? | 3:00 | | | Wednesday 5/25 | L W O P | | | adj 6/1/05 ⑧ |
| Thursday 5/19 | 6.30 | 3:0 | | | Thursday 5/26 | ? | | | |
| Friday 5/20 | 6:3 | 3:00 | | | Friday 5/27 | | | | |
| Saturday 5/21 | | | | | Saturday 5/28 | | | | |

Attendance Register
FD-420 (Rev. 10-27-92)

* I certify that this absence was in accordance with statutes and regulations authorizing sick leave.
# I certify that the Time and Attendance recorded is correct to the best of my knowledge.

# Employee Signature   Sand Ragsdale   # Supervisor Signature _____   XSH

---

FD-282 (Rev. 5/1763)

| 1. NAME (Last, First, Middle Initial) Ragsdale, Sandra | 2. Address(es) and Phone(s) where employee can be reached if leave is for one day or more 614 Wayward Drive, Annapolis, Md |
|---|---|

| 3. Cost Code 1114 | 3a. Squad CPAU | 3b. Work Hours 6:30 – 3:00 pm |
|---|---|---|

**4. TYPE OF LEAVE/ABSENCE** (Check appropriate box(es) below.)

| | DATE From: | To: | TIME From: | To: | Hours by type | Minutes | 5. FAMILY AND MEDICAL LEAVE |
|---|---|---|---|---|---|---|---|
| ☐ Accrued Annual Leave | | | | | | | If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993, please provide the following information: |
| ☐ Restored Annual Leave | | | | | | | |
| ☐ Advanced Annual Leave | | | | | | | |
| ☐ Time Off Award | | | | | | | |
| ☐ Accrued Sick Leave | | | | | | | |
| ☐ Advanced Sick Leave | | | | | | | I hereby invoke my Family and Medical Leave entitlement. |

Purpose: ☐ Medical/Dental/Optical Examination ☒ Serious Medical ☒ Illness ☐ Family Member - Bereavement/Examination/Illness ☐ Adoption

Per case to Sanjeev Jaileswaran

Secure Pair & bat Sivas Sivakalan Appt mg/fut

| ☐ Compensatory Time Off | | | | | | | |
| ☒ Leave Without Pay | 5/23 | 5/25/05 | 6:30 | 3:00 | 24 | 80 | |

Initial: _____

For the Following:
☐ Birth/Adoption/Foster Care
☐ Serious Health Condition of Spouse, Son, Daughter, or Parent
☐ Serious Health Condition of Self

Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the Family and Medical Leave Act of 1993.

**6. CERTIFICATION:** I hereby request leave/approved absence from duty as indicated above and certify that such leave/absence is requested for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

| EMPLOYEE SIGNATURE   Sand Ragsdale | DATE 6/1/05 |
|---|---|

**7. OFFICIAL ACTION ON REQUEST:** ☒ APPROVED   ☐ DISAPPROVED   ☐ CANCELLED
(If disapproved or cancelled, give reason. If annual leave, initiate action to reschedule.)

SUPERVISOR SIGNATURE   Myleene C. Haase   DATE 6/1/05

3

## PART B

## REASON(S) FOR SEEKING COUNSELING

1) Alleged Discrimination Based on:

   a. ☐ Race  *(Specify)*_____    e. ☐ Color  *(Specify)*_____

   b. ☐ Sex  *(Specify)*_____    f. ☐ Religion  *(Specify)*_____

   c. ☐ Age  *(Specify)*_____    g. ☐ National Origin *(Specify)*_____

   d. ☐ Mental Handicap_____    h. ☐ Physical Handicap_____

      I. XX☐ Other *(Specify)*__ Reprisal _____

2) Matter(s)/Action(s) Complained of:

On 06/21/2005 - Sandra Ragsdale alleges that she was discriminated against based on reprisal and identified the issue as time and attendance. On 5/31/2005, Sandra Ragsdale called in for annual leave due to illness. According to Ragsdale she was under the impression that she had accrued eight hours of annual leave during the pay period 13 (PP13). Due to her illness/disability (Lupus, allergies, asthma), Ragsdale has no leave accumulated and was using the leave as it was accurred. Upon her return to work on Wednesday, 6/2/2005, Ragsdale's supervisor Winnifred Huger, along with UC Wyelene Haase, approached her and told her she did not have any leave for PP13, and that she had to take leave without pay. The reason given was if she was approved for this leave, it would be advanced leave, and this is given at the discretion of the supervisor. Both stated that advanced leave would not be granted to her for her absence on 5/31/2005. Ragsdale was told that officially she would not have annual leave until the end of the pay period. Ragsdale feels this was a reprisal by supervisor, Winifred Huger, due to a previous OPR investigation that was filed involving her actions against the complainant. The OPR was based on a performance appraisal, rater Winifred Huger who was Ragsdale's supervisor. Because of the actions by Huger, Ragsdale was only paid 31.75 hours. Her time had to be adjusted because of a late entry into the system, due to UC Haase having the register in her office.

3) Corrective Action Sought:
1. Ragsdale request that Winifred Huger be removed as her supervisor
2. Ragsdale would like to be able to take AL as it is accrued due to her medical condition and doctor appointments, and not be forced to take LWOP.
3. Ragsdale wish to be compensated because of being put in financial difficulty by being given a month's worth of annual leave.

4) Chronology of Events  *(Explain the events causing the aggrieved person to believe he/she has been discriminated against);*

On 06/21/2005 - Sandra Ragsdale alleges that she was discriminated against based on reprisal and identified the issue as time and attendance. On 5/31/2005, Sandra Ragsdale called in for annual leave due to illness. According to Ragsdale she was under the impression that she had acrued eight hours of annual leave during the pay period 13 (PP13). Due to her illness/disability (Lupus, allergies, asthma), Ragsdale has no leave accumulated and was using the leave as it was accurred. Upon her return to work on Wednesday, 6/2/2005, Ragsdale's supervisor Winnifred Huger, along with the UC Wyelene Haase approached her and told her she did not have any leave for this PP13, and that she had to take leave without pay. The reason given was if she was approved for this leave it would be advanced leave and this is given at the discretion of the supervisor. Both stated that advanced leave would not be granted to her for her absence on 5/31/2005. Ragsdale was told that officially she would not have annual leave until the end of the pay period. Ragsdale feels this was a reprisal by supervisor, Winifred Huger, due to a previous OPR investigation that was filed involving her actions against the complainant. The OPR was based on a performance appraisal, rater Winifred Huger who was Ragsdale's supervisor. Because of the actions by Huger, Ragsdale was only paid 31.75 hours. Her time had to be adjusted because of a late entry into the system, due to UC Haase having the register in her office.

On 06/21/2005, writer spoke with Supervisory Personnel Specialist Winifred Huger. Huger was asked about the reason for not granting leave to Ragsdale on 05/31/2005. Huger stated that leave did not show on the system as having been earned for the pay period in question. Huger went on to say that Ragsdale had been out of the office three days the week before (Mon-Wed), she had training on Thursday and Friday when she attended, and the following Monday was holiday, which Ragsdale called in sick. Huger stated that leave is not earned until the end of a pay period. And the decision was made by UC Hasse to not grant advance leave. Huger stated Ragsdale had been counseled in February or March regarding her leave status and calling in for leave without pay (LWOP). Ragsdale was told that she would not be advanced any more leave. Writer asked Huger if this was a policy across the board for all employees in the section. Her answer was yes, and that there was a written communication stating the same policy guidelines. Huger was asked if she would consider removing Ragsdale's LWOP status. Huger stated that she would not remove the LWOP status. Huger was then asked if this was a reprisal against Ragsdale because of a prior OPR complaint that was brought against her (Huger). Huger stated "none of this has to do with any type of reprisal, that it is an administrative matter."

On 621/2005, writer spoke with UC Wyelene Haase regarding the allegation filed by Ragsdale. UC Haase was asked to tell what transpired regarding the leave situation with Sandra Ragsdale. UC Haase stated "leave does not exit until it hit the books." According to UC Haase, Ragsdale does not come to work, and she is not liberal with sick leave. Writer asked UC Haase if Ragsdale was required to bring medical documentation in. UC Haase stated Ragsdale has brought in documentation, however she feels Ragsdale is abusing her leave status. Haase stated Ragsdale always call in on Mondays and its always an emergency. Haase feels Ragsdale need to take responsibility for her leave situation. Haase

P # 2

stated Ragsdale had been granted extensive sick leave from pass supervisors. Writer asked Haase if she felt her decision was based on reprisal or influence from Huger. Haase responded, "no, she does not see any personal issues. If she had she would have switched Ragsdale to another supervisor. Haase stated she has counseled Ragsdale on her options as a disability status, EAP etc. However, Ragsdale would not discuss these options and for a while after the counseling her attendance had improved.

**NOTE: Counselor out for three weeks military and personal leave.**

On 07/25/2005, writer telephonically contacted Selina Jameson, and her recorded indicated she would be out of the office until 08/06/2005. Ragsdale indicated this individual was a witness in this allegation.

On 07/25/2005, writer telephonically contacted Section Chief Sharon Durkin. The conversation took place telephonically, as SC Durkin is located out of the Hoover building. Writer asked SC Durkin if she considered Ragsdale's attendance to be a problem. SC Durkin responded by saying Ragsdale works 20%-35%, which makes her attendance a problem. SC Durkin stated she is no longer in the section, however when she was the leave policy was given to everyone, and was treated the same across the board. SC Durkin stated that Ragsdale had submitted a request for 4-6 weeks for surgery during last summer (2004) and was denied because her extensive use of leave and repeated absence. SC Durkin stated Ragsdale's problems have occurred for years and she, as well as other employees are always asking for advance leave and all are being denied.

On 07/25/2005, writer spoke telephonically with Germaine Brashaw. Brashaw was asked about the leave policy since she has access to the time and attendance system. Brashaw stated she told Ragsdale that she did have leave on the books to use on 05/31/2005, however this was told to her when she returned from taking the leave (call in). Brashaw stated that leave is always a pay period behind, but the leave was on the system by the time Ragsdale returned to work and asked her about it. Brashaw stated the supervisor informed Ragsdale that leave is not earned until the end of a pay period. Brashaw did point out that she had not heard of this policy before and felt that "management was being too technical." Writer asked Brashaw if she felt Ragsdale had been singled out by management to enforce this policy on as example to other employees. Brashaw stated she did feel Ragsdale had been singled out, but she could not offer a reason why. She felt the supervisor (Huger and UC Haase) were new, because in the past this was not done. Brashaw stated she knew of no one else that may have gone through this situation. She feels when Ragsdale calls in sick for leave, she is really sick. Brashaw stated that she had noticed on occasions when Ragsdale came in to work with swollen legs and looked to be in pain.

On 08/08/2005, writer spoke with Selina Jameson telephonically after she returned from leave. Writer asked Jameson to tell her what she knew of the allegation lodged by Ragsdale and the circumstances surrounding it. Jameson stated that UC Haase and Huger asked her to check the system for Ragsdale's balance of leave. Jameson called the Pay Administration Unit for an official ruling on the eight hours of accrued leave by Ragsdale. Jameson stated that because the leave was not showing on 05/31/2005, within the system, it technically could not have been earned. However, because Ragsdale had worked


P = 3

during that pay period, she had accrued the leave and it would show up. Writer asked Jameson if management had instituted a policy across the board regarding leave. Brashaw stated that this policy only seems to be "used toward Ragsdale."

5) Counselor's Plan of Action  *(Should include contacting Servicing Equal Opportunity Officer):*

Counselor contacted everyone that was named within this allegation by Sandra Ragsdale and received their statement concerning the events and circumstances.

6) Inquiry

a. Review of Records  *(Indicate name of records reviewed and date of each review):*

No records were viewed regarding this allegation.

b. Personal Interviews  *(Include date, name, title, organizational position, matter(s) discussed):*

06/21/2005 - Supervisor Winifred Huger
06/21/2005 - Unit Chief Wyelene Haase
07/25/2005 - Section Chief Sharon Durkin
07/25/2005 - Germaine Brashaw
08/08/2005 - Selina James

CALATAYUD JOANNE H
NAME                              SSN                    D11-CLEARANCE PASSAG  1114

1114
COST CODE    SQUAD    RA    **EXEMPT**           PAY PERIOD: 07  FROM: 3/06/2005 - 3/19/2005
FLSA

| DAY | IN | OUT | Initial for sick Leave | REMARKS | DAY | IN | OUT | Initial for sick Leave | REMARKS |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Sunday 3/06 | | | ✓ | | Sunday 3/13 | | | ✓ | |
| Monday 3/07 | 6.30 | 3.00 | ✓ | | Monday 3/14 | 600 | 2.30 | | Flex |
| Tuesday 3/08 | 6.30 | 3.00 | ✓ | | Tuesday 3/15 | 6.00 | 10.30 | | Dentist Appt |
| Wednesday 3/09 | 6.00 | 2.30 | ✓ | Flex | Wednesday 3/16 | 7 hr | | | |
| Thursday 3/10 | 6.30 | 3.00 | | | Thursday 3/17 | 11 hr | | | |
| Friday 3/11 | 8:00 | 2.30 | | Flex | Friday 3/18 | PAL | | | |
| Saturday 3/12 | | | | | Saturday 3/19 | | | | |

Attendance Register
FD-420 (Rev. 10-27-92)

* I certify that this absence was in accordance with statutes and regulations authorizing sick leave.
# I certify that the Time and Attendance recorded is correct to the best of my knowledge.

# Employee Signature _Joanne H Wohl_        # Supervisor Signature _Patricia Scherer_        Y99

FD-382 (Rev. 9/17/02)

**1. NAME** (Last, First, Middle Initial)

Calatayud Joanne H.

**2. Address(es) and Phone(s) where employee can be reached if leave is for one day or more** (S)

| 3. Cost Code | 3a. Squad | 3b. Work Hours |
|---|---|---|
| 114 | CPAU | 6:30 - 3:00 |

**4. TYPE OF LEAVE/ABSENCE**
(Check appropriate box(es) below.)

| | DATE | | TIME | | Hours | Minutes |
|---|---|---|---|---|---|---|
| | From: | To: | From: | To: | by type | |
| ☑ Accrued Annual Leave | 3/14/05 | 3/18/05 | 6 30 | 3 00 | .24 | |
| ☐ Restored Annual Leave | | | | | | |
| ☐ Advanced Annual Leave | | | | | | |
| ☐ Time Off Award | | | | | | |
| ☐ Accrued Sick Leave | | | | | | |
| ☐ Advanced Sick Leave | | | | | | |

Purpose: ☐ Medical/Dental/Optical Examination ☐ Serious Medical ☐ Illness
☐ Family Member - Bereavement/Examination/Illness ☐ Adoption

| | | | | | |
|---|---|---|---|---|---|
| ☐ Compensatory Time Off | | | | | |
| ☐ Leave Without Pay | 1 | | | , | |

**5. FAMILY AND MEDICAL LEAVE**

If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993, please provide the following information:

I hereby invoke my Family and Medical Leave entitlement. Initial:_____

For the Following:

☐ Birth/Adoption/Foster Care
☐ Serious Health Condition of Spouse, Son, Daughter, or Parent
☐ Serious Health Condition of Self

Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the Family and Medical Leave Act of 1993.

**6. CERTIFICATION:** I hereby request leave/approved absence from duty as indicated above and certify that such leave/absence is requested for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

EMPLOYEE SIGNATURE
Joanne H. Calatayud

DATE
3/15/05

**7. OFFICIAL ACTION ON REQUEST:** ☐ APPROVED ☑ DISAPPROVED ☐ CANCELLED
(If disapproved or cancelled, give reason. If annual leave, initiate action to reschedule.)

SUPERVISOR SIGNATURE  Patricia Schrign    DATE 3/15/05

---

FD-382 (Rev. 9/17/02)

**1. NAME** (Last, First, Middle Initial)

Calatayud Joanne H.

**2. Address(es) and Phone(s) where employee can be reached if leave is for one day or more**

| 3. Cost Code | 3a. Squad | 3b. Work Hours |
|---|---|---|
| 114 | CPAU | 6:10 - 2:30 Flex |

**4. TYPE OF LEAVE/ABSENCE**
(Check appropriate box(es) below.)

| | DATE | | TIME | | Hours | Minutes |
|---|---|---|---|---|---|---|
| | From: | To: | From: | To: | by type | |
| ☐ Accrued Annual Leave | | | | | | |
| ☐ Restored Annual Leave | | | | | | |
| ☐ Advanced Annual Leave | | | | | | |
| ☐ Time Off Award | | | | | | |
| ☑ Accrued Sick Leave | 3/15/05 | 3/15/05 | 10 30 | 2 30 | 4 | — |
| ☐ Advanced Sick Leave | | | | | | |

Purpose: ☑ Medical/Dental/Optical Examination ☐ Serious Medical ☐ Illness
☐ Family Member - Bereavement/Examination/Illness ☐ Adoption

| | | | | | |
|---|---|---|---|---|---|
| ☐ Compensatory Time Off | | | | | |
| ☐ Leave Without Pay | | | | | |

**5. FAMILY AND MEDICAL LEAVE**

If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993, please provide the following information:

I hereby invoke my Family and Medical Leave entitlement. Initial:_____

For the Following:

☐ Birth/Adoption/Foster Care
☐ Serious Health Condition of Spouse, Son, Daughter, or Parent
☐ Serious Health Condition of Self

Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the Family and Medical Leave Act of 1993.

**6. CERTIFICATION:** I hereby request leave/approved absence from duty as indicated above and certify that such leave/absence is requested for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

EMPLOYEE SIGNATURE
Joanne H. Calata

DATE
3/15/05

**7. OFFICIAL ACTION ON REQUEST:** ☐ APPROVED ☐ DISAPPROVED ☐ CANCELLED
(If disapproved or cancelled, give reason. If annual leave, initiate action to reschedule.)

SUPERVISOR SIGNATURE  Patricia Schrign    DATE 3/15/05