**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

)
SANDRA RAGSDALE,                                    )
                                                    )
                        Plaintiff,                  )
                                                    )          Civil Action No. 07-1256 (RBW)
            v.                                      )
                                                    )
ERIC HOLDER,                                        )
UNITED STATES ATTORNEY GENERAL,[1]                  )
                                                    )
                        Defendant.                  )
_____)

## MEMORANDUM OPINION

The plaintiff, Sandra Ragsdale, an employee of the Federal Bureau of Investigation

("FBI"), brings this action against the defendant Eric Holder, in his official capacity as Attorney

General of the United States, asserting claims of disparate treatment and harassment under

Section 501 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794 (2006).  Amended

Complaint ("Am. Compl.") ¶¶ 1, 10-17.  Specifically, the plaintiff alleges that because of her

disability and in contrast to how "similarly situated non-disabled employees" have been treated,

her supervisors have denied her the use of annual leave, instead placing her on leave without pay,

id. ¶¶ 10-14 ("Count I"), and have harassed and treated her differently than "similarly situated

non-disabled employees" causing her "severe and emotional distress," id. ¶¶ 15-17 ("Count II").

Currently before the Court is the Defendant's Motion to Dismiss the Complaint or, in the

Alternative, for Summary Judgment ("Def.'s Mot."), which the plaintiff opposes, Plaintiff's

---

[1]         Pursuant to Fed. R. Civ. P. 25(d), Attorney General Eric Holder has been automatically substituted as the
defendant for former Attorney General Alberto Gonzales.

Opposition to Defendant's Motion to Dismiss, or for Summary Judgment ("Pl.'s Mot.").[2]  For

the reasons set forth below, the Court must grant the defendant's motion.

## I.  BACKGROUND

The following are the facts viewed from the perspective most favorable to the plaintiff.

The plaintiff is employed as a GS-12 Personnel Security Specialist with the Security

Reinvestigations Unit, Personnel Security Section, Security Division, of the FBI.  Defendant's

Memorandum in Support of Motion to Dismiss ("Def.'s Mem."), Exhibit ("Ex.") 1 (Feb. 6, 2006

Affidavit of Sandra Ragsdale ("Ragsdale Aff.")) at 1.  She has been employed by the FBI since

1973, and has occupied her current position since 2005.  Id.  The plaintiff's primary supervisors

are Section Chief Sharon Durkin ("Ms. Durkin"), Unit Chief Wyelene Haase ("Ms. Haase") and

Supervisory Personnel Security Specialist Winifred Huger ("Ms. Huger").[3]  Def.'s Mem. at 2.

Due to a fall suffered in 1986 that occurred at her workplace, which required surgery on

both of her knees, the plaintiff has a 30% disability in one knee and a 40% disability in the other,

resulting in "chronic pain and difficulty walking, and also pain and swelling and other symptoms

(fatigue)."  Def.'s Mem., Ex. 1 (Ragsdale Aff.) at 2, 5.  Complicating this condition are the

plaintiff's other "major medical conditions," which include "Asthma, Systemic Lupus

Erythematosus [("Lupus")], Hiatal Hernia, Gastroesophageal Reflux Disease, Arthritis, Bilateral

---

[2]      Also considered in rendering this opinion was the Defendant's Memorandum in Support of Motion to Dismiss ("Def.'s Mem."); the Defendant's Statement of Material Facts Not in Dispute; the Plaintiff's Memorandum of Points and Authorities in Support of Her Opposition to Defendant's Motion to Dismiss, or for Summary Judgment ("Pl.'s Mem."); the Plaintiff's Statement of Material Facts Not in Dispute; the defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Def.'s Reply"); and the Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute.

[3]      The plaintiff previously worked briefly under Ms. Huger "during the period of 1995-1996."  Def.'s Mem., Ex. 1 (Ragsdale Aff.) at 3.  According to the plaintiff, during that time she lodged a complaint against Ms. Huger with the FBI's Office of Professional Responsibility in response to Ms. Huger allegedly improperly altering the plaintiff's employment performance ratings and falsely accusing the plaintiff of not completing a large amount of her assignments.  Id. at 2.  Although the dispute was resolved, the plaintiff claims that Ms. Huger "has held a grudge against me about this incident.  She would pass me in the hallway and not speak at all.  I spoke to her and she barely spoke back.  Her attitude was hostile."  Id. at 3.

Patellar Chrondromalacia, Irritable Bowel Syndrome, Multiple Chronic Allergies and Fibromyalgia." Id. at 2.  The plaintiff requires a cane to assist with walking, and "[d]ue to the pain and swelling, from [her] disability and Lupus symptoms[,] which at times make it impossible for [her] to be mobile," the plaintiff has "had to take considerable time off from work." Id. at 2-3.[4]  However, "[w]hen [she is] able to [go] to work, [she has] no problem performing [her] job[,]" and has "received exceptional performance ratings." Id. at 3.

"Due to her longevity as a federal employee, [the] plaintiff accrues annual leave . . . at a rate of eight hours per pay period," and "[s]he also accrues sick leave . . . at a rate of four hours per pay period." Def.'s Mem. at 2.  Each pay period is two weeks, and under FBI policy "an employee must successfully complete a full pay period in order to accrued [sic] leave." Def.'s Mem., Ex. 4 (Feb. 9, 2006 Affidavit of FBI Human Resources Specialist Maureen A. DeLoach ("DeLoach Aff.")) at 4; see also Def.'s Mem., Ex. 8 (FBI Leave Policy Manual) at 1 ("Leave does not accrue for partial pay periods . . . .").  However, although "[l]eave accruals are not officially earned or applied to an employees [sic] totals until the end of the pay period," "the system will allow leave to be advanced from the projected end of [the pay period.]" Pl.'s Mem., Ex. 1 (June 1, 2005 Email from Selina Jameson to Winifred E. Huger, Wyelene C. Haase, Lynn M. Poindexter, and Brian T. Kelly ("Jameson Letter")).  Thus, an employee may be granted advance annual leave, but the decision to do so "is purely a manager's prerogative." Def.'s Mem., Ex. 4 (DeLoach Aff.) at 4.  Indeed, as the FBI Leave Policy Manual states, advance annual leave "is not a vested right of the employee." Def.'s Mem., Ex. 8 (FBI Leave Policy Manual) at 3; see also Def.'s Mem., Ex. 12 (U.S. Office of Personnel Management Leave Policy

---

[4] The plaintiff also represents that she was unable to report to work due to her need to attend appointments related to her medical problems.  Def.'s Mem., Ex. 1 (Ragsdale Aff.) at 3.

Manual ("OPM Manual")) at 2-3 ("An employee has a right to take annual leave, . . . [however,] [e]mployees do not have an entitlement to advance annual leave.").

The plaintiff's cause of action stems from the denial of her annual leave request and placement on leave without pay "during May and June 2005, pay periods 13 and 15, respectively."[5]  Pl.'s Mem. at 1.  On May 31, 2005, during pay period 13, the plaintiff requested annual leave for that day.  Def.'s Mem., Ex. 1 (Ragsdale Aff.) at 9.  However, when she returned to work the next day, she was informed by Ms. Huger that because she "did not have [advance leave] on the books[,]" she would receive only leave without pay.  Id.  Although the plaintiff claims that "[she] did have [accrued annual leave] as [she] earned it for [pay period 13,]" id., because pay period 13 had not yet ended, "the leave was not showing on 5/31/2005, within the system, [and thus] it technically could not have been earned[,] . . . [although] it would show up [at the end of the pay period,]" Pl.'s Mem., Ex. D (Office of Equal Employment Opportunity Affairs Investigative Notes ("EEO Counselor's Notes"), Statement of Management Assistant Selina Jameson ("Jameson Statement")) at 3-4; see also Def.'s Mem., Ex. 7 (FBI Earnings and Leave Record for Sandra Ragsdale, Pay Period 13 (05/29/2005 – 06/11/2005) ("Ragsdale Leave Record, Pay Period 13")) at 2 (noting that beginning balance for annual leave was zero).  The request for annual leave was officially denied the following day, June 2, 2005.  Def.'s Mem., Ex. 1 (Ragsdale Aff.) at 10; Pl.'s Mem., Ex. D (EEO Counselor's Notes) at 1.  Soon thereafter, during pay period 15, the plaintiff requested advance annual leave for June 29, 2005.[6]  Def.'s

---

[5]     Pay period 13 for calendar year 2005 ran from May 29, 2005 to June 11, 2005.  Def.'s Mem., Ex. 7 (FBI Earnings and Leave Record for Sandra Ragsdale, Pay Period 13 (May 29 – June 11, 2005) ("Ragsdale Leave Record, Pay Period 13")) at 1.  Pay period 15 ran from June 26, 2005 to July 9, 2005.  Def.'s Reply at 9.

[6]     The filings contain contradictions as to when the second alleged discriminatory act occurred, however, since these contradictions are immaterial to the Court's analysis of the plaintiff's second claim, it will assume without deciding that the plaintiff was denied advance annual leave and charged with leave without pay on June 29, 2005.  Compare Plaintiff's Statement of Material Facts Not in Dispute ¶ 6 (alleging denial of advance annual leave

(. . . continued)

Reply at 2; id., Ex. 5 (Approval for Leave for Sandra Ragsdale, Pay Period 15) at 2.  Again, this request was denied by Ms. Haase because the "hours . . . are not accrued until the end of [the pay period]."  Def.'s Mem., Ex. 1 (Ragsdale Aff.) at 10-11.

On June 21, 20005, the plaintiff contacted the Office of Equal Employment Opportunity (the "EEO") and met with an EEO Counselor, "alleg[ing] that she was discriminated against [in the denial of her March 31, 2005 annual leave request] based on reprisal . . . [stemming from the] previous [Office of Professional Responsibility] investigation that was filed involving [Ms. Huger's] actions against the [plaintiff]."  Pl.'s Mem., Ex. D (EEO Counselor's Notes) at 1.  On August 24, 2005, the plaintiff then elected to file a formal administrative complaint with the United States Equal Employment Opportunity Commission (the "Commission") Washington Field Office alleging discrimination on the basis of her disability based on the June 2, 2005 denial of annual leave.  Am. Compl. ¶ 7; Def.'s Reply at 3 & Ex. 2 ("Agency's Opposition to Complainant's Motion to Add Retaliation") ¶ 3.  On February 13, 2007, the plaintiff moved to add a claim for retaliation to her administrative complaint based on the June 29, 2005 denial of her request for annual leave, Def.'s Reply, Ex. 1 (Complainant's Motion to Add Retaliation) ¶ 1, but this request was denied for unspecified reasons on February 28, 2007, Def.'s Reply, Ex. 3 (Order Denying Motion to Add Retaliation).  Subsequently, on March 6, 2007, the plaintiff withdrew her administrative complaint, invoking her right to sue under 42 U.S.C. § 2000e-5(f) (2006) and 29 U.S.C. § 626, and filed this action with the Court, Am. Compl. ¶¶ 8-9, alleging that the denial of her requests for annual leave was based on discrimination against her as a

---

(…continued)
on June 25, 2005), and Pl.'s Mem. at 4 (alleging denial of advance annual leave on June 28, 2005), with Def.'s Reply at 2-3 (stating the plaintiff was charged with leave without pay instead of advance annual leave on June 29, 2005), and Def.'s Reply, Ex. 5 (Attendance Register for Sandra Ragsdale, Pay Period 15) at 2 (showing leave without pay charged on June 29, 2005), and Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute ¶ 6 (stating plaintiff was denied annual leave on June 29, 2005, not June 25, 2005).

disabled person, in violation of section 501 of the Rehabilitation Act of 1973, codified at 29

U.S.C. § 791, id. ¶¶ 11-13, and that she was harassed by her supervisors because of her

disability, in violation of the hostile work environment provisions of the same statute, id. ¶¶ 15-

17.

## II.    STANDARDS OF REVIEW

### A.    Rule 12(b)(1) Motion to Dismiss

In deciding a motion to dismiss based upon lack of subject-matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1), a Court is not limited to the allegations set forth in the

complaint, but "may consider materials outside [of] the pleadings in deciding whether to grant a

motion to dismiss for lack of jurisdiction[.]" Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d

1249, 1253 (D.C. Cir. 2005).  Under Rule 12(b)(1), "[i]t is to be presumed that a cause lies

outside [the federal courts'] limited jurisdiction," Kokkonen v. Guardian Life Ins. Co. of Am.,

511 U.S. 375, 377 (1994), unless the plaintiff establishes by a preponderance of the evidence that

the Court has jurisdiction, see, e.g., Hollington v. Duff, 444 F. Supp. 2d 61, 63 (D.D.C. 2006).

### B.    Rule 12(b)(6) Motion to Dismiss

On the other hand, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)

tests whether the plaintiff has properly stated a claim upon which relief can be granted.

Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000).  For a complaint to survive a Rule

12(b)(6) motion, it need only provide "a short and plain statement of the claim showing that the

pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007) (alteration in original) (internal quotation marks omitted) (quoting Conley v.

Gibson, 355 U.S. 41, 47 (1957)).  "Although detailed factual allegations are not necessary to

withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds of entitlement to relief, a plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action." Hinson ex rel. N.H. v. Merritt Educ. Ctr., 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555). Thus, "[t]he complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Hinson, 521 F. Supp. 2d at 27 (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555). In other words, the plaintiff's allegations are "entitled to the assumption of truth" only in so far as they comprise of more than "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1951 (2009) (indicating that bare allegations that the defendant knew of and condoned discriminatory behavior and that discrimination was part of the defendant's workplace policy did not "'nudge [the plaintiff's] claims' of invidious discrimination 'across the line from conceivable to plausible'" (citing Twombly, 550 U.S. at 570)). Therefore, in evaluating a Rule 12(b)(6) motion, "[t]he complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged[,]" Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks omitted), except in the case of purely conclusory allegations, Iqbal, __ U.S. at __, 129 S. Ct. at 1951. Moreover, "[a] dismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks omitted) (quoting Jarrell v. U.S. Postal Serv., 753 F.2d 1088, 1091 (D.C. Cir. 1985)). Finally, the Court "may

consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice[,]" Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**C.    Summary Judgment**

Courts will grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-moving party, Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006), and draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). The non-moving party, however, cannot rely on "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (internal quotation marks omitted) (quoting Anderson, 477 U.S. at 248), and "conclusory allegations unsupported by factual data will not create a triable issue of fact," Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks omitted) (quoting Exxon Corp.v. FTC, 663 F.2d 120, 127 (D.C. Cir. 1980)). Rather, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial[,]" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted), and a genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" Anderson, 477 U.S. at 248. If the Court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden

of proof[,]" then the moving party is entitled to summary judgment.  <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 323 (1986).

Federal Rule of Civil Procedure 56(e)(1) provides that "[a] supporting or opposing

affidavit must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant is competent to testify on the matters stated."  However,

"[w]hile a nonmovant is not required to produce evidence in a <u>form</u> that would be admissible at

trial, the evidence must still be capable of being converted into admissible evidence."  <u>Gleklen v.</u>

<u>Democratic Cong. Campaign Comm., Inc.</u>, 199 F.3d 1365, 1369 (D.C. Cir. 2000).  Thus, for

example, hearsay cannot be considered in awarding or avoiding summary judgment.  <u>See id.</u>

Moreover, "[t]o be admissible at the summary judgment stage, documents must be authenticated

by and attached to an affidavit that meets the requirements of Rule 56(e)."  <u>Nnadili v. Chevron</u>

<u>U.S.A., Inc.</u>, 435 F. Supp. 2d 93, 105 (D.D.C. 2006) (quoting <u>Carmona v. Toledo</u>, 215 F.3d 124,

131 (1st Cir. 2000)) (declining to consider in motion for summary judgment maps lacking any

authentication); <u>see also</u> Fed. R. Civ. P. 56(e)(1) ("If a paper or part of a paper is referred to in an

affidavit, a sworn or certified copy must be attached to or served with the affidavit."); <u>Ashford v.</u>

<u>District of Columbia</u>, Civil Action No. 02-1955 (RMC), 2006 WL 2711530, at *2 (D.D.C. Sept.

21, 2006) ("A failure to present any evidence of their authentication in light of the defendants'

challenge would render the documents inadmissible at trial." (citing Fed. R. Evid. 1003)); <u>Wells</u>

<u>v. Xpedx</u>, No. 8:05-CV-2193-T-EAJ, 2007 WL 2696566, at *2 (M.D. Fla. Sept. 11, 2007) ("[T]o

be considered for or against summary judgment, a document must be authenticated, either by an

affidavit that meets the requirements of Rule 56(e) [of the] Federal Rules of Civil Procedure, or

in accord with the Federal Rules of Evidence.").  Indeed, for the Court to accept anything less

"would defeat the central purpose of the summary judgment device, which is to weed out those

cases insufficiently meritorious to warrant the expense of a jury trial." Greene v. Dalton, 164

F.3d 671, 675 (D.C. Cir. 1999).

Finally, it should be noted that because of the difficulty of establishing discriminatory

intent, "an added measure of rigor, or caution, is appropriate in applying this standard to motions

for summary judgment in employment discrimination cases." Aka v. Wash. Hosp. Ctr., 116 F.3d

876, 879-880 (D.C. Cir. 1997) (internal quotation marks omitted), rev'd on other grounds, 156

F.3d 1284 (D.C. Cir. 1998) (en banc).

### III. LEGAL ANALYSIS

**A.    The Defendants' Failure to Exhaust Administrative Remedies Challenge**

Section 501 of the Rehabilitation Act, codified at 29 U.S.C. § 791, which provides "[t]he

exclusive remedy for federal employees alleging that federal agencies engaged in disability

discrimination," Rand v. Geithner, 609 F. Supp 2d 97, 100 (D.D.C. 2009), limits judicial review

"to any employee or applicant for employment aggrieved by the final disposition of [their

administrative] complaint, or by the failure to take final action on [their administrative]

complaint[,]" 29 U.S.C. § 794a(a)(1).[7]  To properly exhaust one's administrative remedies under

the Rehabilitation Act, an aggrieved individual must first file an administrative charge with an

Equal Employment Opportunity Counselor regarding the alleged violation within 45 days of its

occurrence.  29 C.F.R. § 1614.105(a)(1) (2008).  The District of Columbia Circuit has interpreted

the exhaustion requirement of section 501 of the Rehabilitation Act as presenting a strict

jurisdictional barrier to the filing of judicial complaints that fail to comply with that provision.

See Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006) (noting that the Rehabilitation Act

---

[7]      The Court will only consider whether the alleged discriminatory employment practices violated the
Rehabilitation Act because while the plaintiff initially brought her claim as a violation of the Americans with
Disabilities Act of 1990, 42 U.S.C. § 12112, Complaint ("Compl.") ¶¶ 1, 10-17, her amended complaint only seeks
relief for alleged violations of the Rehabilitation Act, Am. Compl. ¶¶ 1, 10-17.

"mandat[es] administrative exhaustion[,]" and holding that "[t]he district court . . . should have

dismissed [the plaintiff's] Rehabilitation Act claim for lack of jurisdiction" because "[s]uch

jurisdictional exhaustion, as we have called it, may not be excused") (emphasis added) (internal

quotations omitted); Moore v. Schafer, 573 F. Supp. 2d 216, 219 (D.D.C. 2008) ("[U]nlike some

exhaustion requirements, Section 501's is jurisdictional."); Int'l Union v. Clark, Civil Action No.

02-1484 (GK), 2006 WL 2598046, at *9 (D.D.C. Sept. 11, 2006) (noting that "because a

jurisdictional exhaustion requirement [like the one imposed by section 501] is a condition to the

waiver of sovereign immunity it must be strictly construed" (citing Irwin v. Dep't of Veterans

Affairs, 498 U.S. 89, 94 (1990) (internal quotation marks omitted))).  Thus, because the

Rehabilitation Act's exhaustion requirement is jurisdictional, the Court may "not read futility or

other exceptions into [the] statutory exhaustion requirements where Congress has provided

otherwise."  Spinelli, 446 F.3d at 162 (emphasis added) (internal quotation marks omitted)

(citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)); see also Moore, 573 F. Supp. 2d. at 220

(rejecting application of "sufficient notice" and equitable estoppel exceptions to circumvent

exhaustion requirement of the Rehabilitation Act) (citing Spinelli, 46 F.3d at 162); Int'l Union,

2006 WL 2598046, at *10 (discussing the impact of Spinelli, and rejecting the application of the

"vicarious exhaustion" theory in that Rehabilitation Act case).

      For the first time in its reply filing, the defendant argues that the plaintiff's complaint

should be dismissed for failure to exhaust her administrative remedies to the extent that it is

based on the refusal of her supervisors to grant her advance annual leave for pay period 15.

Def.'s Reply at 2-3. [8]  The defendant bases this argument on the failure of the plaintiff to

---

[8]     While a party ordinarily is not permitted to raise an argument for the first time in its reply filing, because the argument pertains to whether the Court has federal jurisdiction to entertain this challenge, the Court is obliged to

(. . . continued)

specifically include an allegation of discrimination or retaliation during pay period 15 in her

initial administrative charge, <u>see</u> Pl.'s Mem., Ex. D (EEO Counselor's Notes) at 1, and the

Commission's denial of her motion to amend her administrative complaint to include the refusal

of advance annual leave during pay period 15, <u>see</u> Def.'s Reply, Ex. 1 (Complainant's Mot. To

Add Retaliation); <u>id.</u>, Ex. 3 (Order Denying Motion to Add Retaliation); Def.'s Reply at 2-3.

     As the defendant correctly points out, <u>see</u> Def.'s Reply at 5, in <u>National Railroad

Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), the Supreme Court held that each discrete

adverse employment action triggers the statutory exhaustion requirement. <u>Id.</u> at 114.  Although

the plaintiff in <u>Morgan</u> alleged numerous acts of discrimination and retaliation, the Supreme

Court held that only those acts occurring within the applicable limitations period were

actionable, regardless of any connection between the earlier acts and the ones about which the

plaintiff had filed a timely complaint.  <u>See id.</u> at 113 ("[D]iscrete discriminatory acts are not

actionable if time barred, <u>even when they are related to acts alleged in timely filed charges</u>.")

(emphasis added).  Thus, "[a]fter <u>Morgan</u>, to determine whether a claim must meet the

procedural hurdles of the exhaustion requirement itself, or whether it can piggy-back on another

claim that has satisfied those requirements . . . , the Court must decide whether the otherwise

barred claim is for a 'discrete' act of discrimination."  <u>Rand</u>, 609 F. Supp. 2d at 101 (quoting

<u>Coleman-Adebayo v. Leavitt</u>, 326 F. Supp. 2d 132, 137-38 (D.D.C. 2004)); <u>accord, e.g.</u>, <u>Camp v.

District of Columbia</u>, No. Civ.A. 04-234(CKK), 2006 WL 667956, at *7 (D.D.C. Mar. 14,

2006); <u>Romero-Ostolaza v. Ridge</u>, 370 F. Supp. 2d 139, 149 (D.D.C. 2005).  Generally, hostile

work environment claims which rely on allegedly discriminatory conduct falling outside the

---

(…continued)

consider the question.  <u>See</u> <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 278 (1977) (indicating
that courts "are obliged to inquire <u>sua sponte</u> whenever a doubt arises as to the existence of federal jurisdiction.").

applicable time period for filing an administrative complaint are treated as an exception to the rule set forth in <u>Morgan</u>, "because a hostile work environment violation – unlike a discrete act such as firing or failing to promote an employee – 'cannot be said to occur on any particular day.'" <u>Coghlan v. Peters</u>, 555 F. Supp. 2d 187, 203 (D.D.C. 2008) (quoting <u>Morgan</u>, 536 U.S. at 117).  Unlike hostile work environment claims, each "[d]iscrete act[] such as termination, failure to promote, denial of transfer or refusal to hire" is "a separate actionable 'unlawful employment practice'" because each occurs at a fixed time.  <u>Morgan</u>, 536 U.S. at 114.  Accordingly, the defendant argues that because each decision to deny the plaintiff advance annual leave is a discrete action, and because the plaintiff initiated an EEO investigation on June 21, 2005, <u>before</u> the second denial of advance annual leave on June 29, 2005 (thus limiting the investigation of her charge to the events of pay period 13), the plaintiff's claim should be dismissed for failure to exhaust her administrative remedies to the extent it relies upon the events occurring during pay period 15.[9]  <u>See</u> Def.'s Reply at 2-6.

The defendant concedes that the plaintiff has exhausted her administrative remedies with regard to pay period 13.  Def.'s Reply at 6 n.2.  Clearly, then, as it pertains to her hostile work environment claim, the plaintiff has exhausted her administrative remedies and may rely on the events of pay period 15 to support her position.  <u>See</u> <u>Morgan</u>, 536 U.S. at 115 ("Hostile work environment claims are different in kind from discrete acts.  Because their very nature involves repeated conduct[.]"); <u>Coleman-Adebayo</u>, 326 F. Supp. 2d at 137 ("For hostile-work-environment claims, then, discriminatory acts may be used by a plaintiff in proving the claim, even if those actions occurred outside of the filing period.") (citing <u>Morgan</u>, 536 U.S. at 115-21).

---

[9]      Although the defendant appears to treat this argument as one for dismissal for failure to state a claim upon which relief can be granted based on Federal Rule of Civil Procedure 12(b)(6), <u>see</u> Def.'s Reply at 2; Def.'s Mem. at 6, in reality it is one for dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and will be treated as such.

However, regarding her <u>disparate treatment claim</u>, the Court agrees that the plaintiff has failed to exhaust her administrative remedies with respect to the events of pay period 15.  The plaintiff lodged her preliminary EEO charge before the June 29, 2005 denial of her request for advance annual leave for pay period 15 even occurred, and she failed to file another administrative complaint after that second denial even though it is separately actionable.  <u>Cf.</u> <u>Morgan</u>, 536 U.S. at 115 ("[I]n direct contrast to discrete acts, a single act of harassment may not be actionable on its own.").  The decision to deny an employee advance annual leave, as it relates to the plaintiff's disparate treatment claim, is more akin to a "[d]iscrete act[] such as termination, failure to promote, denial of transfer or refusal to hire," <u>id.</u> at 114, than to actions asserting hostile work environment claims, which by "[t]heir very nature involve[] repeated conduct[,]" <u>id.</u> at 115; <u>see</u> <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 550 U.S. 618, 638 (rejecting plaintiff's "hostile salary environment" theory that "a pay discrimination claim is like a hostile work environment claim" because, with the latter, "the actionable wrong is the environment, not the individual acts that, taken together, create the environment").[10]  Moreover, the plaintiff simply has not set forth facts

---

[10]      The Lilly Ledbetter Fair Pay Act of 2009 ("Fair Pay Act"), 42 U.S.C.A. § 2000e-5(e) (West 2009), applies to discrimination claims brought under section 501 of the Rehabilitation Act that were pending or initiated after May 28, 2007, but it is not applicable to the present case because the Fair Pay Act only alters the remedy available to plaintiffs alleging discriminatory compensation decisions, not discrete discriminatory acts.  Specifically, the Fair Pay Act states, "an unlawful employment practice occurs . . . when an individual becomes subject to a discriminatory compensation decision or other practice . . . including each time wages, benefits, or other compensation is paid," and that a plaintiff can "recover[] . . . back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge."  <u>Id.</u> § 2000e-5(e)(3).  For instance, in <u>Gentry v. Jackson State University</u>, 610 F. Supp. 2d 564 (S.D. Miss. 2009), the district court held that the Supreme Court's <u>Ledbetter</u> decision continues to control disparate treatment claims involving discrete discriminatory acts other than claims related to pay.  <u>Id.</u> at 566 (finding plaintiff's alleged denial of tenure was a discrete act with an available remedy under the Fair Pay Act because it involved a related salary increase that qualified as a "compensation decision"); <u>see also</u> <u>Johnson v. District of Columbia</u>, 632 F. Supp. 2d 20, 21-22 (D.D.C. 2009) (reviving discriminatory compensation claims under the Fair Pay Act by a judge of this Court).  Furthermore, another district court found that the Fair Pay Act does not apply to cases where the plaintiff has failed to exhaust available administrative remedies for "discrete discriminatory acts other than pay."  <u>Speer v. Mountaineer Gas Co.</u>, Civ. Action No. 5:06CV41 (STAMP), 2009 WL 2255512, at *7 n.6 (N.D.W. Va. July 28, 2009) (dismissing with prejudice a discrimination claim where the plaintiff was not permitted to work and failed to file a claim with the Equal Employment Opportunity Commission (the "EEOC") within the

(. . . continued)

tending to show – or that even alleged – that the disparate treatment she alleges is "so pervasive and ongoing that the exception to exhaustion recognized in Morgan for hostile-work environment cases may be applied directly or extended by analogy." Coleman-Adebayo, 326 F. Supp. 2d at 138 n.3 (discussing the implications of the Morgan holding, noting that in certain "circumstances in which multiple acts of discrimination or retaliation occur after the act giving rise to the initial administrative charge, each of which is tied to the same discriminatory decision[,] . . . [t]o require the employee to exhaust administrative remedies as to each [subsequent discriminatory decision] . . . would seem to put an excessive burden on plaintiffs"); see also Shea v. Rice, 409 F.3d 448, 451-53 (D.C. Cir. 2005) (holding that the plaintiff's claims for discriminatory treatment in pay level that occurred after the filing of his sole administrative charge were not barred, because each paycheck he received was a discrete, actionable act and he "allege[d] a persistent discriminatory salary structure" rather than "isolated discriminatory acts that had continuing consequences under neutral salary systems" (citing Morgan, 536 U.S. at 111-12 (emphasis added))).  Thus, because the plaintiff failed to file a preliminary administrative charge with an EEO Counselor within 45 days of the denial of her pay period 15 request for advance annual leave, the Court agrees that it is without jurisdiction to adjudicate the plaintiff's disparate treatment claim based that denial.[11]

---

(…continued)

applicable statute of limitations).  Therefore, the Fair Pay Act does not eliminate the requirement that a plaintiff exhaust available administrative remedies when alleging discrete acts of discrimination.  Consequently, it follows that the Supreme Court's Ledbetter decision controls and, as applied to the facts in this case, causes the Court to conclude that the alleged discriminatory practice concerning pay period 15 amounted to a denial of advance annual leave, a discrete act unrelated to compensation or pay.  Accordingly, the plaintiff should have filed a new administrative grievance with the EEOC regarding pay period 15 because her previous grievance did not necessarily put the defendant on notice that she was seeking redress for that pay period, and the alleged discriminatory practice in pay period 15 was separately actionable.

[11]      EEOC regulations provide that "[a] complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint."  Weber v. Battista, 494 F.3d 179, 183 (D.C. Cir. 2007) (quoting 29 C.F.R. § 1614.106(d) (2006)); see also 29 C.F.R. § 1614.106(d)

(. . . continued)

B.      **The Plaintiff's Disparate Treatment Claim**

Under the Rehabilitation Act, "the two essential elements of a discrimination claim are

that (i) the plaintiff suffered an adverse employment action (ii) <u>because of</u> the plaintiff's . . .

disability." <u>Baloch v. Kempthorne</u>, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (emphasis added).

"Because the enforcement standards of the Rehabilitation Act are the same as in the Americans

with Disabilities Act ("ADA"), case law analyzing disability benefits under the ADA applies

with equal force to the Rehabilitation Act." <u>Holmes-Martin v. Leavitt</u>, 569 F. Supp. 2d 184, 194-

195 (D.D.C. 2008) (citing 29 U.S.C. § 791(g)); <u>see also</u> <u>Aka</u>, 156 F.3d at 1288 (holding that the

<u>McDonnell-Douglas</u> framework applies equally to ADA and Rehabilitation Act cases).  Thus, in

Rehabilitation Act cases, "[when] an employer [has] assert[ed] a legitimate, nondiscriminatory

reason for an adverse employment action, the district court must conduct one central inquiry in

considering an employer's motion for summary judgment[:] . . . whether the plaintiff produced

sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory

reason was not the actual reason <u>and</u> that the employer intentionally discriminated against the

plaintiff on [the basis of her disability]."[12] <u>Adeyemi v. District of Columbia</u>, 525 F.3d 1222,

---

(…continued)

(2009).  In <u>Weber</u>, the Court determined that it did have jurisdiction over a plaintiff's second claim that had not been filed with an EEO Counselor within 45 days of its occurrence, because she had successfully amended her formal EEOC complaint to include that claim, which was subsequently investigated, and thus "[the plaintiff there] gave the [defendant] an opportunity to resolve her claim administratively before she filed her complaint in district court."  <u>Id.</u> at 183-84.  Here, however, the FBI did not have the same degree of notice or opportunity to resolve the pay period 15 claim administratively, as the defendant did in <u>Weber</u>, because the plaintiff's delayed attempt to amend her formal administrative complaint to include the events of pay period 15 was denied, <u>see</u> Def.'s Reply, Ex. 3 (Order Denying Motion to Add Retaliation), and the investigation of her complaint was specifically limited to "whether [the plaintiff] was discriminated against based on [her] disability (physical) when" she was denied advance annual leave during pay period 13, Def.'s Mem., Ex. 1 (Ragdale Aff.) at 1.  Thus, the EEOC's "like or related" test does not save the plaintiff's disparate treatment claim based on the events of pay period 15.

[12]      Before turning to this inquiry, the Court must first address two of the defendant's arguments concerning the plaintiff's prima facie case under the Rehabilitation Act.  First, the defendant argues that the placement of the plaintiff on leave without pay was not an adverse employment action, because at the time she requested advance annual leave on May 31, 2005 (during pay period 13), the plaintiff had not accrued any annual leave, and thus "she 'suffered no objectively tangible harm.'"  Def.'s Mem. at 17 (quoting <u>Currier v. Postmaster Gen.</u>, 304 F.3d 87, 89

(. . . continued)

1226 (D.C. Cir. 2008) (emphasis added) (citing Brady v. Office of the Sergeant at Arms, 520

F.3d 490, 493-95 (D.C. Cir. 2008)); see also Reeves v. Sanderson Plumbing Prods., Inc., 530

U.S. 133, 153 (2000) ("The ultimate question in every employment discrimination case

involving a claim of disparate treatment is whether the plaintiff was the victim of intentional

discrimination.").  In response to the plaintiff's allegation of disparate treatment by the

defendant's refusal to grant her advance annual leave for her absence on May 31, 2005 (during

pay period 13), the defendant asserts that "[t]he denial of [the] plaintiff's request was consistent

with a universally[-]applied policy within [her division] that requests for advance [annual leave]

would not be approved."  Def.'s Mem. at 22; see also Def.'s Reply at 9 ("In accordance with FBI

policy, an employee does not accrue leave from a pay period until the end of that pay period."

The "[p]laintiff did not, in fact, have a sufficient annual leave balance that would have enabled

her to take [annual leave] on either May 31, 2005 [during pay period 13] or June 29, 2005

[during pay period 15]."  Her "request[s] [were] denied because she had a [zero annual leave

balance entering those pay periods].");  see supra Part I (Background).  In response, the plaintiff

---

(…continued)
(D.C. Cir. 2002)).  The plaintiff responds that by being placed on leave without pay, instead of advance annual
leave, she experienced a loss in compensation of $273.20 per day, Pl.'s Mem. at 8 n.4, and that she thus experienced
an adverse employment action, id. at 8-9.  The Court agrees that a diminution in pay, even where the plaintiff
avoided a worse penalty (being placed on 'absent without leave'), see Def.'s Mem. at 17, constitutes a materially
adverse employment action.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 71-73 (holding that a
suspension without pay, even where an employer later provided back pay, could be "a serious hardship" to a
reasonable employee, and thus "materially adverse"); Greer v. Paulson, 505 F.3d 1306, 1317-18 (D.C. Cir. 2007)
(finding that placement on leave without pay, which entailed, inter alia, a loss of compensation and negative
consequences for employee's eligibility for benefits, was an adverse employment action).
        The defendant also argues that the plaintiff is not disabled within the meaning of the Rehabilitation Act,
which defines a disability as "a physical or mental impairment that substantially limits one or more major life
activities," 29 U.S.C. § 705(9)(B) (2006), which includes "walking," 29 C.F.R. § 1630.2(i) (2008). The defendant
claims that "[t]he record is devoid of specific information about the effects of the [plaintiff's] condition[s] on [her]
major life activities."  Def.'s Mem. at 19.  However, the plaintiff's affidavit closely details the significant effects of
her Bilateral Patellar Chrondromalacia on her ability to walk, and also discusses the additional effects of her other
illnesses (e.g. Lupus).  See Def.'s Mem., Ex. 1 (Ragsdale Aff.) at 2-6 and supra Part I (Background).  Indeed, the
plaintiff's supervisors admit to being aware of the plaintiff's medical conditions and their effects on her ability to
walk.  See, e.g., Def.'s Mem., Ex. 3 (Mar. 1, 2006 Affidavit of Wylene C. Haase ("Haase Aff.")) at 2; Def.'s Mem.,
Ex. 5 (Jan. 25, 2006 Affidavit of Winifred Huger ("Huger Aff.")) at 2.  Thus, the Court concludes that the plaintiff is
disabled within the meaning of the Rehabilitation Act.

offers three categories of evidence in her attempt to establish that the defendant's nondiscriminatory reason for not granting her request for annual leave is merely a pretext for intentional discrimination on the basis of her disability.  See Pl.'s Mem. at 6-8.  Because the Court finds the plaintiff has failed to produce sufficient evidence from which a reasonable jury could find intentional discrimination by the defendant on the basis of her protected status, for the following reason it must grant the defendant's motion for summary judgment on her disparate treatment claim.[13]

First, the plaintiff points out that although Ms. Huger stated in her affidavit that "I do not recall authorizing an employee under my supervision to take leave when they did not have the leave accrued," Def.'s Mem., Ex. 5 (Jan. 25, 2006 Affidavit of Winifred Huger ("Huger Aff.")) at 4; see also id. at Ex. 3 (Mar. 1, 2006 Affidavit of Wyelene C. Haase ("Haase Aff.")) at 7 ("I have never approved the advancement of annual leave to an employee under a similar circumstance such as Ms. Ragsdale . . . ."), the plaintiff in fact was granted advance annual leave by Ms. Haase on May 15, 2005, during pay period 12, even though she entered that pay period with a zero balance of accrued annual leave, Pl.'s Mem. at 6.  Compare Pl.'s Mem., Ex. C (Leave Report for Sandra Ragdale, Pay Period 12) at 1 (granting eight hours annual leave on May 16, 2005), with Def.'s Mem., Ex. 6 (FBI Earnings and Leave Record for Sandra Ragsdale, Pay Period 12 (05/15/2005 – 05/28/2005) ("Ragsdale Leave Record, Pay Period 12")) at 2 (noting that beginning balance of annual leave was zero hours).  Although the plaintiff accordingly contends that the defendant's apparently "inconsistent explanation is not worthy of belief and

---

[13]      Although the Court has determined that it is without jurisdiction to adjudicate the plaintiff's claim of disparate treatment based on the events of pay period 15, see supra Part III.A, the present analysis applies with equal force to that claim as well.  Thus, even if the Court could exercise jurisdiction over the plaintiff's second disparate treatment claim, it would be compelled to grant summary judgment to the defendant on that claim for the reasons stated in this section of this opinion.

infers discrimination," Pl.'s Mem. at 7, the Court disagrees.  To be sure, as the plaintiff points

out, "[i]n 'appropriate circumstances, the trier of fact can reasonably infer from the falsity of the

explanation that the employer is dissembling to cover up a discriminatory purpose.'"  Pl.'s Mem.

at 8 (emphasis added) (quoting Reeves, 530 U.S. at 147).  However, as the Reeves Court goes on

to note,

> [s]uch a showing by the plaintiff will [not] always be adequate to
> sustain a jury's finding of liability.  Certainly there will be
> instances where, although the plaintiff has established a prima
> facie case and set forth sufficient evidence to reject the
> [employer's] explanation, no rational factfinder could conclude that
> the action was discriminatory.

Reeves, 530 U.S. at 148 (emphasis in original).  The simple fact that the plaintiff's supervisor,

Ms. Huger,[14] granted her advance annual leave during one pay period and then denied the same

request during the next, see Def.'s Mem., Ex. 1 (Ragsdale Aff.) at 10-11, does not give rise to an

inference of intentional discrimination on the basis of the plaintiff's protected status – indeed,

that fact weighs against a finding of a discriminatory animus in the decision to deny the

plaintiff's request for advance annual leave during pay period 13.  See Czekalski v. Peters, 475

F.3d 360, 368-69 (D.C. Cir. 2007) (discussing what is known as the same-actor inference, noting

that the fact that the same person who reassigned the plaintiff for allegedly discriminatory

reasons also hired her and even had recommended her for a promotion "is probative evidence

against the claim that he harbored a general animus against female employees[,]" but concluding

that "in light of all [the] evidence, a reasonable trier of fact could conclude" that the defendant

acted with discriminatory animus); Waterhouse v. District of Columbia, 298 F.3d 989, 996

---

[14]      The plaintiff identifies Ms. Huger as the supervisor who denied her advance annual leave in her affidavit,
Def.'s Mem., Ex. 1 (Ragsdale Aff.) at 9, however, the defendant states that Ms. Haase "advised Ms. Huger that she
would not approve plaintiff's request for advance [annual leave]," Def.'s Mem. at 5-6; id., Ex. 5 (Huger Aff.) at 4.
The apparent contradiction is immaterial to the Court's analysis since the supervisor's action does not give rise to an
inference of intentional discrimination, regardless of which supervisor actually made the decision.

(affirming the district court's grant of summary judgment in favor of the defendant, noting that the probative value of a statement by the plaintiff's supervisor concerning the racial makeup of the District's managers "was seriously undercut by the undisputed fact that [the same supervisor] approved the decision to hire [the plaintiff] earlier that same year"); Isse v. Am. Univ., 540 F. Supp. 2d 9, 38 n.29 (discussing the same actor inference in the context of employee evaluations). Although the same actor inference "is just that, an inference, which 'cannot immunize [the defendant] from liability for subsequent discrimination,'" Isse, 540 F. Supp. 2d at 38 n.29 (quoting Czekalski, 475 F.3d at 369), it does work here to require the plaintiff to present further evidence to defeat the defendant's motion for summary judgment.

Next, the plaintiff points to what appear to be notes recorded by an EEO Counselor during the course of the investigation of the plaintiff's initial administrative charge. See Pl.'s Mem., Ex. D (EEO Counselor's Notes). These notes contain records of telephone conversations with the "[d]efendant's Time and Attendance professionals, Germaine Bradshaw and Selena [sic] Jameson," to an unidentified EEO Counselor, which purportedly "confirmed that [the] [p]laintiff was 'singled-out' by her supervisors when she was" denied advance annual leave and placed on leave without pay. Pl.'s Mem. at 7; see id., Ex. D (EEO Counselor's Notes, Statement of Germaine Bradshaw ("Bradshaw Statement")) at 3 ("Writer asked Brashaw[15] [sic] if she felt Ragsdale had been singled out by management to enforce this policy . . . as [an] example to other employees. Brashaw [sic] stated she did feel Ragsdale had been singled out, but she could not offer a reason why. . . . Brashaw [sic] stated she knew of no one else that may have gone through this situation."); Pl.'s Mem., Ex. D (EEO Counselor's Notes, Jameson Statement) at 4 ("Writer asked Jameson if management has instituted a policy across the board regarding leave. Brashaw

---

[15]    The plaintiff consistently refers to "Germaine Bradshaw" in her filings, so the reference to "Germaine Brashaw" in the EEO Counselor's Notes is considered a typographical error.

[sic] stated that this policy only seems to be 'used towards Ragsdale.'")  In response, the defendant argues that not only are these statements "inadmissible hearsay which will not defeat a motion for summary judgment," but that "even if admissible," they do not establish that the denial of advance annual leave was motivated by a discriminatory animus.  Def.'s Reply at 13 n.6.

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c). As discussed above, inadmissible hearsay (hearsay not falling within a recognized exception) may not be considered when evaluating the merits of a motion for summary judgment, nor may any documents which are not (or cannot be) properly authenticated.  See Gleklen, 199 F.3d at 1369; Nnadili, 435 F. Supp. 2d at 105; see supra Part II.C.  Here, not only are the Bradshaw and Jameson statements – which are being introduced to prove the matters they assert, i.e., that the plaintiff was singled out in being denied her request for advance annual leave – contained in what appear to be an EEO Counselor's notes lacking any authentication or supporting affidavit, but they are also unsigned (much less sworn to) by the Counselor or Investigator (indeed, the Counselor or Investigator is not even identified), not dated, and replete with typographical and what appear to be other significant errors, see, e.g., Pl.'s Mem., Ex. D (EEO Counselor's Notes) at 1 ("wish" rather than wishes); id. at 2 ("acrued" rather than accrued; "call" rather than calls; "need" rather than needs); id. at 4 (documenting telephone conversation with Selina Jameson, report states: "Writer asked Jameson if management had instituted a policy across the board regarding leave.  Brashaw [sic] stated that this policy seems to be 'used toward Ragsdale.'") (emphasis added).  Moreover, "[s]tatements made by third persons that are recorded in an investigative report are hearsay within hearsay.  As such, they are inadmissible unless they

qualify for their own exclusion from the hearsay rule." Barry v. Trustees of the Int'l Ass'n Full-Time Salaried Officers & Employees of Outside Local Unions & Dist. Counsel's (Iron Workers) Pension Plan, 467 F. Supp. 2d 91, 102 (D.D.C. 2006) (quoting Weinstein's Federal Evidence § 803.10[4][a] (LexisNexis 2006)); see also Crowley v. L.L. Bean, Inc., 303 F.3d 387, 410 (1st Cir. 2002) (holding that various witness statements contained in an investigative report are hearsay within hearsay and are inadmissible at trial); Wells, 2007 WL 2696566 at *3 (declining to consider in evaluating a motion for summary judgment an EEO Counselor's notes, "[which were] unsigned, unsworn, and lacking [any] affirmative indication of the document's author" and other "unsworn statements . . . contain[ing] double hearsay"). Although an EEO Counselor's notes may be admissible under the business records exception to the hearsay rule, see Smith v. Universal Servs., Inc., 454 F.2d 154, 157 (5th Cir. 1972); Fed. R. Evid. 803(6), here the complete lack of any authentication of the notes submitted by the plaintiff makes the propriety of considering them under this exception extremely questionable.

However, even if these notes were admissible, the statements of Bradshaw and Jameson do not raise an inference of intentional discrimination against the plaintiff by her supervisors on the basis of her disability. The Bradshaw statement simply states that "in the past [the denial of advance annual leave] was not done[,]" and that Bradshaw "did feel [the plaintiff] had been singled out, but she could not offer a reason why." Pl.'s Mem., Ex D (EEO Counselor's Notes, Bradshaw Statement) at 3 (emphasis added). And the Jameson statement notes only that "Brashaw [sic] state[s] that this policy only seems to be 'used towards [the plaintiff].'" Id. at 4 (emphasis added). Even if these statements could be construed in a manner that calls into question the accuracy of the claim that the FBI's leave policy was "universally applied," Def.'s Mem. at 22, they certainly do not permit an inference that the plaintiff was denied advance

annual leave because of her disabled status; indeed, these statements amount to nothing more than rank "speculation, which is not the same as evidence showing" that the FBI's leave policy was not universally applied, much less that discriminatory animus motivated the actions of the plaintiff's supervisors, Forman v. Small, 271 F.3d 285, 294 (D.C. Cir. 2001).  Thus, the Bradshaw and Jameson statements add nothing to the plaintiff's effort to defeat the defendant's motion for summary judgment.

Finally, in order to establish an inference of intentional discrimination, the plaintiff attempts to "identify [a] similarly-situated person[] outside of her protected class [who was] afforded leave during the relevant time period."  Pl.'s Mem. at 7.  In her attempt to do this, the plaintiff has submitted the Leave Report of Joanne Calatayud, Pl.'s Mem., Ex. E (Leave Report for Joanne Calatayud) (filed under seal), who was at the time a Personnel Security Specialist with the FBI.  See also Pl.'s Mem., Ex. F (Attendance Register, Joanne Calatayud, Pay Period 7 (03/06/2005-03/19/2005) ("Attendance Register for Joanne Calatayud")); id., Ex. G (Approval for Leave for Joanne Calatayud, Pay Period 7 (03/06/2005-03/19/2005) ("Approval for Leave for Joanne Calatayud")).  "In order to show that she was similarly situated to a fellow employee, [the] plaintiff must 'demonstrate that all of the relevant aspects of their employment situation are nearly identical,'" including working under the same supervisor.  Childs-Pierce v. Utility Workers Union of Am., 383 F. Supp 2d 60, 70 (D.D.C. 2005) (quoting Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995)).  This the plaintiff has clearly failed to do with respect to Ms. Calatayud for several reasons.  As the defendant correctly points out, Ms. Huger and Ms. Haase were not Ms. Calatayud's supervisors and did not approve her requests for leave.  See Childs-Pierce, 383 F Supp. 2d at 73 n.9 ("[T]he fact that [the] plaintiff and [the proffered comparator] did not deal with the same supervisor with respect to their

requests for . . . sick leave deems them not similarly situated for purposes of this claim."); Def.'s

Reply at 7; <u>see</u> Pl.'s Mem., Ex. F (Attendance Register for Joanne Calatayud) at 1 (signed by

Patricia Scherger).  Even more significantly, the Approval for Leave and the Attendance Register

for Ms. Calatayud do not establish that Ms. Calatayud was granted <u>advance</u> annual leave, as was

requested by the plaintiff during pay period 13 (and 15).  On the contrary, Ms. Calatayud was

granted <u>sick</u> leave and <u>accrued</u> annual leave during pay period 7.  <u>See</u> Pl.'s Mem., Ex. G

(Approval for Leave for Joanne Calatayud).  Indeed, unlike the plaintiff's zero balance of

accrued annual leave entering pay period 13 (and 15), Ms. Calatayud in fact entered pay period 7

with <u>120</u> hours of accrued annual leave, of which she used 24 during that pay period.  Def.'s

Reply, Ex. 9 (Leave Accounting List for Joanne Calatayud) at 1.  Thus, the plaintiff has failed to

demonstrate that she and Ms. Calatayud are similarly situated for the purposes of establishing her

disparate treatment claim.[16]

Because the plaintiff has failed to produce any evidence – either individually or

cumulatively – sufficient to allow a jury to infer intentional discrimination by the plaintiff's

supervisors on the basis of her protected status, the Court must grant the defendant's motion for

summary judgment with respect to her claim of disparate treatment.

## C.      The Plaintiff's Hostile Work Environment Claim

To prevail on a hostile work environment claim, "a plaintiff must show that h[er]

employer subjected h[er] to discriminatory intimidation, ridicule, [or] insult that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive

---

[16]      The plaintiff's affidavit also notes that on at least one occasion a commendation concerning the quality of
her work by a senior official with the Security Division was ignored by her immediate supervisors.  Def.'s Mem.,
Ex. 1 (Ragsdale Aff.) at 8-9.  This allegation seems to be raised as support for her claim that other employees would
have received recognition for their performance from their supervisors based on the commendation.  However, the
plaintiff has presented nothing of substance that supports this proposition.

working environment." Baloch, 550 F.3d at 1201 (internal quotation marks omitted).[17]   In

determining whether a hostile work environment exists, the Court must look to "the totality of

the circumstances, including the frequency of the discriminatory conduct, its severity, its

offensiveness, and whether it [reasonably] interferes with an employee's work performance." Id.

The standard for judging hostility is "sufficiently demanding" so as to "filter out complaints

attacking the ordinary tribulations of the workplace." Childs-Pierce, 383 F. Supp 2d at 77

(internal quotation marks omitted) (citing Faragher v. Boca Raton, 524 U.S. 775, 788 (1998)).

Thus, "the conduct complained of 'must be extreme to amount to a change in the terms and

conditions of employment.'" Franklin v. Potter, 600 F. Supp. 2d 38, 76 (D.D.C. 2009) (quoting

Faragher, 524 U.S. at 788).   Moreover, "it must be clear that the hostile work environment was

the result of discrimination based on a protected status." Childs-Pierce, 383 F. Supp. 2d at 77.

Indeed,

> [e]veryone can be characterized by sex, race, ethnicity, or (real or
> perceived) disability; and many bosses are harsh, unjust, and rude.
> It is therefore important in hostile work environment cases to
> exclude from consideration personnel decisions that lack a linkage
> of correlation to the claimed ground of discrimination.   Otherwise,
> the federal courts will become a court of personnel appeals.

Id. at 77-78 (quoting Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002)).

In support of her hostile work environment claim, the plaintiff relies only on her own

affidavit and the EEO Counselor's Notes.   Pl.'s Mem. at 9-10.   She claims that the following

events establish her hostile work environment claim: repeated denials of her requests for sick

leave and placement on leave without pay; a "false[] accus[ation]" in 1997 by Ms. Huger that the

---

[17]       "[T]his Circuit has not yet ruled that the Rehabilitation Act permits a hostile work environment claim . . . ."
Pantazes v. Jackson, 366 F. Supp. 2d 57, 71 (D.D.C. 2005).   In the present case, the Court will follow the precedent
of "assum[ing], without deciding, that the Rehabilitation Act creates a cause of action for [a] hostile work
environment [claim]." Kuraner v. Mineta,   No. 00-5416, 2001 WL 936369, at *1 (D.C. Cir. July 10, 2001).

plaintiff failed to complete a significant amount of her work; an alleged threat by Ms. Haase to

terminate the plaintiff's employment should her attendance not improve; and "an evil smirk" she

received from Ms. Huger.  Id. at 9; Def.'s Mem., Ex. 1 (Ragsdale Aff.) at 3, 6, 10; Pl.'s Mem.,

Ex. D (EEO Counselor's Notes) at 3-4.  Yet again, however, the plaintiff is relying on the

unauthenticated EEO Counselor's Notes as support for her position that she was "singled-out by

management in her use of accrued annual leave," in her attempt to raise an inference of

discrimination based on her disability status.  Pl.'s Mem. at 9.  And as a result of the colletive

impact of these actions, which she characterizes as "unprofessional and cruel[,]" Def.'s Mem.,

Ex. 1 (Ragsdale Aff.) at 9, the plaintiff claims to have been so "devastated[,]" id. at 10, and

"stressed," id. at 8, that she had to postpone her doctor's appointments and come to work ill on

one occasion with a painful infection, id.  She also claims to have suffered "severe and emotional

distress including, but not limited to, insomnia, loss of appetite, depression, anxiety,

embarrassment, humiliation, symptoms of physical illness, despair, anger and loss of faith in her

employer."  Am. Compl. ¶ 17.

    The defendant argues that the plaintiff's hostile work environment claim must be

dismissed because "[e]ven if the plaintiff's claims were true, the alleged conduct is not

sufficiently severe or pervasive to alter the conditions of [her] employment and does not create

an abusive working environment."  Def.'s Reply at 13 (internal quotation marks omitted); see

also Def.'s Mem. at 23-26.[18]  The defendant further argues that the plaintiff's affidavit and the

EEO Counselor's Notes are "insufficient to [establish] . . . that the alleged harassment was

---

[18]     In the Defendant's Memorandum in Support of Motion to Dismiss, he argues for dismissal of the plaintiff's hostile work environment claim for failure to state a claim upon which relief can be granted.  See Def.'s. Mem. at 25-26.  However, the plaintiff relies on affidavits and exhibits to support her hostile work environment claim, and argues that summary judgment on this claim is improper.  See Pl.'s Mem. at 9-10.  Thus, because the Court has considered submissions outside the pleadings, and because the plaintiff was on fair notice that the motion was alternatively seeking summary judgment, the defendant's motion on this claim shall be treated as one for summary judgment under Rule 56.  See Fed. R. Civ. P. 12(b).

[motivated by discriminatory animus]."  Def.'s Reply at 13, n.6.  In response, the plaintiff notes

only that "whether the [alleged] conduct rises to the level of culpability against the [d]efendant.

[sic] is a triable issue for the jury to determine.  Accordingly, [the p]laintiff's [hostile work

environment claim] should survive [the d]efendant's motion."  Pl.'s Mem. at 9-10 (citation

omitted).  Because the Court agrees that the alleged harassment does not rise to the level of a

legally-cognizable hostile work environment claim, the Court must grant the defendant summary

judgment on the plaintiff's hostile work environment claim.

The actions described by the plaintiff – two discretionary denials of advance requests for

annual leave and being designated on those occasions as having been on leave without pay rather

than being absent without pay, a 1997 incident involving an alleged "false[] accus[ation]," a

"threat" concerning the plaintiff's attendance record, and an "evil smirk" in an office hallway –

simply do not present those types of extreme and pervasive circumstances required to prevail on

a hostile work environment claim.  Def.'s Mem. at 9; id. at Ex. 1 (Ragsdale Aff.) at 3, 6, 10;

compare Pantazes v. Jackson, 366 F. Supp. 2d 57, 71 (D.D.C. 2005) (denying summary

judgment for defendant on hostile work environment claim based on disability where plaintiff

"offered evidence of alleged statements by various agency officials that suggest a discriminatory

purpose, unreasonably lengthy delays by [agency] in responding to his [repeated] requests for

accommodations, and an inadequately explained refusal to provide needed . . . training"), with

Vickers v. Powell, 493 F.3d 186, 198, 201 (D.C. Cir. 2007) (internal quotation marks and

citation omitted) (noting that "the district court was correct that the three incidents within the

[statute of limitations] period [(a supervisor's "angry threats" and derogatory remarks about

minorities, poor performance evaluations, and being "singled out for a requirement to provide

inordinate amounts of medical information to support requests for leave")] were insufficient to

support a hostile work environment claim"), and Franklin, 600 F. Supp. 2d at 77 ("[T]he fact that

an employee and his immediate supervisor repeatedly butted heads, that the supervisor

frequently yelled at [the plaintiff] during discussions about . . . work, and that the supervisor

threatened him with job-related consequences for his refusals to meet workplace expectations

does not demonstrate a hostile work environment pervaded by discrimination . . . ." (citing Smith

v. Jackson, 539 F. Supp. 2d 116, 138 (D.D.C. 2008) (internal quotation marks omitted))).

 Rather than presenting evidence of an atmosphere of pervasive, extreme hostility and

abuse, the plaintiff has presented accusations which amount at best to several isolated,

"sporadic" incidents of office tension with little or no relationship to each other.  Baloch, 550

F.3d at 1199, 1201 (affirming grant of summary judgment for defendants in hostile work

environment action where a supervisor reassigned the plaintiff's duties and lessened his

responsibilities, imposed sick leave restrictions on the plaintiff, proposed two separate

suspensions of the plaintiff, gave the plaintiff a poor performance review, and engaged in several

intense verbal altercations with the plaintiff).  Moreover, although the unsubstantiated allegations

of emotional distress, humiliation, anxiety, depression, physical illness, etc., which the plaintiff

claims to have suffered as a result of the alleged actions by Ms. Huger and Ms. Haase, are

"'relevant to determining whether the plaintiff actually found the environment abusive,' [these

purported effects of their actions] are merely one factor to take into account when determining

whether the environment is 'objectively hostile or abusive.'"  Franklin, 600 F. Supp. 2d at 78

n.21 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22).  And without more, the Court

finds that they are not.  Further, the plaintiff has failed to show that the purported acts about

which she complains were committed for discriminatory reasons because of her disability.  See

Baloch, 550 F.3d at 1201 (affirming dismissal of hostile environment claim where none of the

defendant's alleged comments or actions were expressly focused on plaintiff's disability); see also Kline v. Springer, 602 F. Supp. 2d 234, 243 (D.D.C. 2009) (finding plaintiff's hostile work environment claims unsubstantiated by the evidence in the record and that plaintiff's allegations were not corroborated by any direct or circumstantial evidence that would show impermissible motive or discriminatory animus).

Thus, because the plaintiff's allegations and evidence fail to rise to the level of a legally-cognizable hostile work environment claim, the Court will grant the defendant's motion for summary judgment with respect to this claim.

### IV. CONCLUSION

For the foregoing reasons, the Court must dismiss for lack of jurisdiction the plaintiff's disparate treatment claim based on the events of pay period 15, and enter summary judgment in favor the of the defendant on the plaintiff's remaining disparate treatment claim and her hostile work environment claim.[19]

_____/s/_____
Reggie B. Walton
 United States District Judge

---

[19]     An Order consistent with the Court's ruling accompanies this Memorandum Opinion.